Fowler *v.* Depau.

[NEW YORK GENERAL TERM, December 23, 1857. *Mitchell, Davies* and *Clerke,* Justices.]

FOWLER and others *vs.* DEPAU and others.

A testator died in 1836, leaving a widow and seven children—two sons and five daughters. After making a provision for his wife, in lieu of dower, and giving certain legacies to others, the testator, by the sixth clause of his will, gave and devised all the residue of his estate, real and personal, to his five daughters, for life, in equal portions; and upon the decease of his said daughters respectively, leaving issue surviving, he devised to such issue, the principal and the real estate in which he had before given a life estate to his, her or their mother; to have and to hold such principal and real estate to such issue, and his, her or their heirs, &c. forever, in equal portions; and in case the issue of any or either of his daughters should die before attaining the age of 21, and without leaving any issue him or her surviving, then the testator directed the share or portion of the one so dying to go to his or her surviving brothers and sisters in equal portions, and the issue of such as should then be deceased, such issue taking the same share as his, her or their parent would have taken if living; and if either of his daughters should die without leaving issue surviving, then the remainder of the estate, both real and personal, thus allotted to such daughter, should fall into and constitute part and parcel of the residue of the testator's estate, and belong to the surviving sisters and their issue, in the manner and proportion before specified. By the seventh clause of his will, the testator directed that in case both, or either, of his sons should marry, he or they so marrying, and his or their issue, should be put upon the same footing, in all respects in regard to his estate, both real and personal, as the daughters and their issue; and in that event the rest, residue and remainder of his estate, real and personal, should be divided into six or seven equal parts, as the case might be, and be divided and distributed among his said married son, or sons, and daughters and their respective issue, in the manner and portions directed in regard to the daughters; the shares of grandchildren not to be paid over to them before they attained the age of thirty years; they in the mean time receiving only the interest or income. The children of the testator were all of full age, and all except F. A. D. were married, and had children living.

Fowler *v.* Depau.

F. A. D. married after the death of the testator, and died, leaving a son, F, D., who was still living.

*Held*, 1. That the whole sixth clause of the will was valid; and that even if the latter part of the clause were not so, its invalidity would only affect the share of a child of the testator who should die without leaving any issue, and would not impair any other share, or the devise in the previous part of the 6th clause.

2. That each of the children of the testator was entitled to an estate for life, in one equal undivided seventh part of the estate of the testator, and that the children of each child were entitled, as tenants in common, to a vested remainder in fee in said one seventh part in which their parents had a life estate, subject to be divested in quantity by letting in after-born children, and to be divested entirely by the death of either of said grandchildren before its parent, or before reaching 21 years of age, and without leaving lawful issue him or her surviving, and leaving brothers or sisters him or her surviving.

3. That F. D., one of the grandchildren of the testator, and son of F. A. D., deceased, was entitled to an absolute estate, in his own right, in fee simple, in the one other equal undivided seventh part of the estate; the principal, however, not to be paid to him until he should attain the age of thirty years.

4. That by the terms and provisions of the will, the absolute ownership of each class of grandchildren in the respective shares in which their parent had a life estate, was only suspended during the lifetime of such parent; and that in case the issue of any or either of said children of the testator should die without leaving lawful issue, the share or portion of the one so dying would go to his or her surviving brothers and sisters in equal proportions, and the issue of such as should then be deceased, such issue taking the same share as his or her parent would have taken if living; and that a contingent remainder was thereby created, to take effect in the event that the persons to whom the first remainder was limited, should die under the age of 21 years, and without leaving lawful issue him or her surviving.

5. That the provision whereby the testator directed that the principal of the estate should not be paid over or delivered to the grandchildren until they respectively attained the age of thirty years, was a good and valid restriction.

6. That a division and partition of the real and personal estate should be made into seven equal parts or shares, upon these principles, by the executors, with power to them to sell the real estate.

By another clause of the same will, the executors were appointed trustees, in these words: "I hereby constitute and appoint (them) the trustees of my daughters and grandchildren, during their respective lives." *Held*, that this provision was inoperative, as to the real estate, and left the legal estate in the children and grandchildren, under § 49 of 1 *R. S.* 728.

The will merely "authorized and empowered" the executors to sell the real estate. It did not direct or order them to sell it; nor did it authorize the sale for any purpose of distribution, or to carry out any trust. *Held*, that

this gave a mere power, to be exercised only if found convenient; that it was not imperative, and was not a power in trust; and that no beneficiary could compel a sale against the judgment or will of the executors.

To cause a conversion from real estate to personal, the will should decisively and definitively fix upon the land the quality of money.

APPEAL from a decree made at a special term. The action was brought by Theodosius O. Fowler and Mortimer Livingston, individually and with their wives, and also as sole surviving executors of the last will and testament of Francis Depau of the city of New York, deceased, for a construction of said will; to have their accounts as executors and trustees since January 31, 1854, passed; for a partition and division of the estate among the parties entitled thereto; and for the appointment of separate trustees, for the several shares. The testator died on the 13th day of January, 1836, having duly made his last will and testament, dated April 16th, 1833, which was duly proved as a will of real and personal estate on the 4th day of April, 1836, before the surrogate of the county of New York. By his will, after giving to his wife an annuity of $6000 and making other bequests in her favor, which annuity and bequests were to be in lieu of dower, and giving some legacies to a portion of his children, he devised as follows: "*Sixth.* All and singular the rest, residue and remainder of my estate, both real and personal, in possession, reversion, remainder or in expectancy, and howsoever and wheresoever situate, I hereby give, devise and bequeath to my five daughters, that is to say: Amelia Fowler, the wife of Theodosius O. Fowler, Eliza Fox, the wife of the said Doctor Samuel M. Fox, Caroline Livingston, the wife of Henry W. Livingston, Sylvia, the wife of Mortimer Livingston, and Stephania Coster, the wife of Washington Coster; to have and to hold the same to my before named five daughters, during the period of their respective natural life, in equal portions, or share and share alike; and upon the decease of my said daughters respectively, leaving issue surviving at the time of such death, I hereby give, devise and bequeath to the

Fowler *v.* Depau.

surviving issue of such daughter so dying, the principal and the real estate, as the case may be, a life estate in which I have hereinbefore given to their, his or her mother during her natural life; to have and to hold such principal and real estate to such issue, and their, his or her heirs, executors, administrators and assigns forever, in equal portions, if more than one, or share and share alike; and in case the issue of any or either of my daughters should die before attaining the age of twenty-one years, and without leaving any issue him or her surviving, then I direct the share or portion of the one so dying to go to his or her surviving brothers and sisters, in equal portions, or share and share alike, and the issue of such as may then be deceased, such issue taking the same share as his, her or their parent would have taken if living; and should either of my said daughters die without leaving issue, at the time of such death, surviving, then the remainder of the estate, both real and personal, hereby allotted to such daughter so dying, shall fall into and constitute part and parcel of the residue of my estate, and belong to the surviving sisters and their issue, in the manner and proportion herein already specified.

*Seventh.* In case both or either of my before named two sons should marry, then I do hereby direct, and such is my will, that he or they so marrying, and his or their issue, shall be put upon the same footing, in all respects, in regard to my estate, both real and personal, as my before named five daughters and their issue; and, in that event, the said rest, residue and remainder of my estate, both real and personal, shall be divided into six or seven equal parts, as the case may be, and be divided and distributed among my said married son, or sons and daughters, and their respective issue, in the manner and portions above directed, in regard to my said daughters; and I do further direct, that the principal of my estate, both real and personal, hereinbefore given to my grandchildren respectively, should not be paid or delivered over to them, until they severally attain the age of thirty years; but

that they may respectively have and enjoy the income and interest thereof, from the times when they may severally become entitled thereto, upon the death of their respective parents."

The testator appointed his five sons-in-law, Theodosius O. Fowler, Henry W. Livingston, Samuel M. Fox, Mortimer Livingston and Washington Coster, and also his friends, John Bolton and George W. Strong, executors of his will; and such of them as should qualify as such executors, and the survivors and survivor of them, he constituted and appointed the trustees of his daughters and grandchildren during their respective lives.

The testator left him surviving seven children—two sons and five daughters—all of full age, and all, except Francis A., married and having children living. Francis A. married after the death of the testator, and died, leaving an only child, Francis Depau, now living. Letters testamentary were issued by the surrogate to the plaintiffs Theodosius O. Fowler and Mortimer Livingston, and to Henry W. Livingston, Samuel M. Fox and Washington Coster, who alone qualified as executors.

The executors, in pursuance of these directions of the will, had paid the income to the seven children, and had held and managed the principal of the estate, (which now amounts to one million of dollars,) for the period of 20 years. The parties, adults and infants, all appeared by solicitors and guardians *ad litem.* General answers were put in on behalf of the infants, submitting their rights under the will; and, on behalf of three of the adult defendants, the answers claimed and insisted that the provisions of the will were opposed to the limitations provided in the revised statutes, and that the remainders contained in said will were therefore void, and they prayed for a judicial construction of said will, and that the testator's estate might be divided into seven equal parts, and divided or distributed in fee, and absolutely, among his seven children, or their heirs and representatives.

The cause was tried before Justice DAVIES, at a special

Fowler v. Depau.

term, on the 2d of May, 1856; who, after hearing the testimony, certified the following as his conclusions of law, viz:

That by the true construction of the will, under the provisions whereof the property sought to be partitioned is held, the whole estate of the testator was to be deemed personal from the time of his death, and the executors and trustees named were directed, in pursuance of the power to them given in said will, to convert into personal property the remaining realty of said estate, and to hold the same, when so converted into personalty, in trust, according to the provisions of said will, until the appointment of their successors in said trust. That the rights and interests of the said parties, plaintiffs and defendants, were as follows: Each of the children of the testator was entitled under said will to an estate for life in one equal undivided seventh part of the estate of the testator, and that the children of each child, the grandchildren of said testator, were entitled, share and share alike, as tenants in common, to a vested remainder in fee in said one equal undivided seventh part in which their respective parents have a life estate, subject however to each one's share, to be divested in quantity by letting in after-born children, and to be divested entirely by the death of either of said grandchildren before its parent, or before attaining twenty-one years of age, and without leaving lawful issue him or her surviving, and leaving brothers and sisters him or her surviving. That Francis Depau, one of the grandchildren of said Francis Depau, deceased, and son and only child of Francis A. Depau, deceased, was entitled under said will to an absolute estate in his own right in fee simple in the one other equal undivided seventh part of the said estate, the principal of the said share however not to be paid to him until he attains the age of thirty years. That by the terms and provisions of said will, the absolute ownership of each class of grandchildren in their respective shares in which their parent had a life estate, was only suspended during the lifetime of such parent; and that in case the issue of any or either of said children of the testator shall die without leaving lawful

issue him or her surviving, the share or portion of the one so dying will go to his or her surviving brothers and sisters in equal proportions, or share and share alike, and the issue of such as shall then be deceased, such issue taking the same share as his or her parent would have taken if living, and that a contingent remainder in fee is thereby created, to take effect in the event that the persons to whom the first remainder is limited shall die under the age of twenty-one years, and without leaving lawful issue him or her surviving. That if any of the children of the testator who are entitled to life estates under said will should die without leaving issue, the said testator had not in and by his said will made any valid provision for such a contingency, and in the happening of any such contingency the testator should be deemed to have died intestate as to such share or shares, and such share or shares would thereupon vest absolutely in the heirs at law of the testator. That the provision in said will, whereby the testator directs that the principal of the estate shall not be paid over or delivered to the grandchildren until they respectively attain the age of thirty years, was a good and valid restriction. That the rights and interests of the parties to this suit are subject to all such orders as this court or any court of competent jurisdiction have made, or shall make, in regard to the same. That after the conversion of the remaining real estate into personalty, a partition should be made into seven equal parts or shares among the parties to this suit, according to their rights and interests therein, upon the principles above mentioned. That trustees should be designated for the respective shares, to hold and manage the same during the lifetime of the respective persons entitled to life estates, and to pay over and deliver the same to the persons entitled under said will, as remaindermen, their shares respectively, after the termination of the life estate. That a referee should be appointed to make such division and partition, and to designate the said trustees and whether security should be required from said trustees, and to take and state the accounts of said executors from the 31st

Fowler *v.* Depau.

day of January, 1854, to the time of the division of said estate, and to report to this court.   That upon such division and accounting being made, the executors should assign and deliver over the respective shares to the respective trustees designated, and receive their discharge.   That the costs of the respective parties, with a reasonable allowance, should be paid out of the funds of the estate by the executors.   And that the mortgages given by Stephania Coster and Caroline D. Livingston, to the United States Trust Company of New York, are valid liens upon their respective shares in said estate.

From the decree entered at special term in pursuance of the above finding by the judge, the defendants Lewis A. Depau and Stephania Coster, children of the testator, and Theododosius A. Fowler and Sylvia Livingston, grandchildren of said testator, and The United States Trust Company of New York, mortgagees of the life estate of the said Stephania Coster, appealed to the general term.

*A. Hamilton, jun.,* for the plaintiffs.

*James H. Storrs,* for the defendants L. A. Depau and Stephania Coster.

*Josiah Sutherland,* for the defendants H. W. Livingston and wife.

*Walter L. Livingston,* for infants.

*Cambridge Livingston,* for the defendants Johnston Livingston and wife.

*E. S. Van Winkle,* for United States Trust Company.

*George A. Halsey,* for T. A. Fowler and wife.

*By the Court,* MITCHELL, P. J.   Francis Depau in the year 1833 made his will, and died in 1836.   He left two sons

(Francis and Lewis A.) and five daughters. The testator gave to each of the sons an annuity so long as he should remain unmarried. At the date of the will both of the sons were un-married, but Lewis A. married before the death of the testator, and Francis A. after the testator's death. The testator gave his residuary real and personal estate to his five daughters for life, and then over as hereafter mentioned; but provided that if either or both of his sons should marry, he or they and his or their issue should come in and share in all respects as his daughters and their issue. Both sons did marry. This caused the residuary estate to be divisible into seven instead of five shares. The testator "authorized and empowered" his executors and the survivor of them to sell his house and lot, 358 Broadway, with the concurrence of his wife, and the rest of his real estate without her concurrence. He also appointed them "the trustees of his daughters and grandchildren during their respective lives," but without any express declaration as to what the trusts should be. The sixth clause contains the said devise and bequest of the rest, residue and remainder of the testator's real and personal estate. Construing it as admitting the two sons, it gives said estate to the seven children to hold during their respective lives, in equal portions. This gave to each an undivided one-seventh part for life. Then it provides for two contingencies, in the *alternative*, (one of which must occur,) and makes different dispositions of his property ac-cordingly; one in case a child dies leaving issue surviving her; the other in case the child leaves no issue surviving her or him. Upon the decease of a child leaving issue surviving, he gives to such issue the principal and the fee of the share in which the parent of such issue had a life estate. This was a remainder upon a life estate—a remainder in fee upon a life estate in one undivided seventh part. Next he provides for another contingency. This issue might die before attaining the age of 21 years. The testator accordingly declares that if the issue of any child should die before attaining the age of 21 years and without leaving issue surviving him, his or her

share should go to his or her surviving brothers and sisters in equal portions, and the issue of such as may be then deceased, *per stirpes.* This is "a contingent remainder in fee created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited shall die under the age of 21 years." It is thus expressly sanctioned by the 16th section of 1 *R. S.* 724, which authorizes such a contingent remainder, and makes it an *exception* to the rule forbidding the suspension of the absolute power of alienation for a longer period than during the continuance of not more than two lives in *being* at the creation of the estate.

The whole of the provisions of the will in the first alternative contemplated by the testator are thus seen to be valid. The other provision—made upon another contingency, on the other alternative—forms no connecting or concatenous part of the first: it does not provide for part of the same chain of events, nor form part of the estates to be created in the succession of events first provided for. It provides for an event *contrary* to that for which the first provides. The two cannot therefore be united as if forming part of one estate, and thus defeat each other. That second provision is, in case any child of his should die *without* leaving issue surviving him or her, then neither of the preceding remainders is to arise, for *they* were to the children or grandchildren of the testator's child who left issue; *this* for the testator's child who should leave no issue. In this last event the remainder in the share allotted to the testator's daughter, (she dying without issue,) is to form part of the testator's residuary estate and to belong to the surviving brothers and sisters of such deceased one and their issue, in the manner and proportion herein already specified. This would vest the one-seventh, on the death of the testator's child, in her brothers and sisters equally for life if they were living, and remainder to their issue in fee, with a contingent remainder over if such issue died under 21 years of age. In this case the power of alienation would be suspended as to one-seventh part during the

life of the testator's child; next, (taking the strongest case against the validity of the devise, as is necessary, and supposing, therefore, all the other children of the testator to be then living,) a separate one-sixth part of said one-seventh part would pass to each of the six surviving children of the testator, for life, remainder in fee as to each separate one-forty-second part of the estate, to the issue of the said second taker for life, with a contingent remainder over as to the same one-forty-second part, to the surviving brothers and sisters of any one of the issue dying under 21 years of age. The power of alienation then would be suspended as to each one-forty-second part during the life of the first taker of the one-seventh, and during the life of the next taker for life, and then the remainder would vest in fee in the issue of the second taker for life, with a contingent remainder over in fee to take effect in the event that the persons, to whom the remainder is limited, shall die under 21 years of age. In other words, the power of alienation as to each one forty-second part is suspended only during two lives in being at the creation of the estate, and on the contingency of the first remainderman dying under 21 years of age. This is expressly authorized, as before shown. It may seem an objection, that the first one-seventh is thus divided into six parts, and that a like contingency thus attaches to each one-sixth of that one-seventh; and it may seem that thus the estate is made to depend on six lives. This can seem so only by not distinguishing between the land and the estate. Each separate one-seventh, immediately on the death of the first taker in the case supposed, becomes divided into six equal parts, a separate one-sixth passing to each of the six individuals, so that no one of the other five has any interest in it. It would be entirely different if the shares were joint, with a joint interest as joint tenants and not as tenants in common. The testator has thus cut up his estate into 42 equal parts, and given six of those equal parts to each child for life, and then, in the event supposed, one of each of the last six equal parts

Fowler *v.* Depau.

to each of the second takers. This he might have done, and he has done it, in more general language.

It is supposed, however, that if one child should die without issue and her estate be divided into six equal parts, and one of her brothers and sisters should afterwards die without issue, not only his one-seventh would fall into the residue and be divided as the share of the previous decedent was, but that also the one-forty-second part of the testator's estate which the second taker acquired from the previous decedent would pass in the same way. The will does not say so: it had "allotted" (to use its words in this clause) a life estate to each child in the first part of this clause, and provided for a remainder over, also in the first part of this clause; it is that remainder, which was one-seventh of his estate, and that only, which the testator gives over, not a new remainder in a one-forty-second part to arise out of the contingency provided for in the latter part of this clause. It is the one remainder in the estate allotted to the daughter so dying, and that only, which is to fall into the residue. The language of the will, after providing for the life estate to each daughter with remainder over, is, "should either of my said daughters die without leaving issue at the time of such death, surviving, then the *remainder* of and in the estate, both real and personal, *hereby* allotted to *such* daughter so dying, shall fall into," &c. The remainder of the estate hereby allotted, means the remainder in that part of the estate which was hereinbefore allotted to said daughter; and does not include any estate which the daughter might acquire by the prior decease of a sister or brother.

Again, successive contingent limitations over of an estate are not to be implied, without a very clear intent to that effect. *Jarman (see his edition of Powell on Devises, vol. 2, ch. 32)* considers that cross remainders may be *implied* on a devise of an estate in *tail*, but seems to hold that cross executory limitations are not to be implied in a devise in *fee*, or a bequest of personal estate. Much less should *successive* limitations be implied

when there is no clear direction of the testator to that effect. Even in case of estates tail, cross remainders are implied from a devise over, when such words as these are used, "in case *all* the first takers shall die without issue :" that makes *successive* estates among the first takers necessary before the devise over shall take effect. Here the devise to the brothers and sisters is complete as to each share, on the death of the one tenant for life of that share without issue, and there is no devise over, in case *all* the children of the testator die without issue. It has been before observed, that the provision in the latter part of this sixth clause is not in continuation of the events provided for in the former part of the clause, but on another event and in the *alternative*. In such case, if the last limitations over be too remote, it does not affect the other ; and the will is valid or not, according as the event shall be. So here, if the devise on the event of a daughter dying without issue is too remote, it does not affect the devise made on the reverse supposition of a daughter leaving issue at her death. The distinction is seldom adverted to, but is clearly stated, in reported cases, and in some of the elementary writers on wills. The rule is, that if on a particular contingency the power of alienation is so suspended that it may *possibly* exceed the limits prescribed by law, the estate granted on *that particular* contingency is void ; but this defect, which would affect the estate only if that contingency had occurred, can have no effect on it if that contingency does not occur ; then that unlawful estate is not attempted. Accordingly, the good alternative estate is sustained notwithstanding the defect which would have been in the other, if the course of events had created it. *Jarman,* in his edition of *Powell on Devises,* (*vol.* 2, *p.* 400, 1,) after speaking of the unlawful suspension, says : "But care should be taken to distinguish between those cases, and those in which the devise over is limited to arise on an *alternative* event—one branch of which is within and the other is not within the prescribed limits ; so that the devise over will be valid or not, according to the event. As

Fowler *v.* Depau.

in the case of a limitation to A. and his heirs, and if he shall die *without leaving any issue at his death, or leaving such,* they shall die under 23, then to B. in fee. Here there are two distinct and alternative events, on which the executory devise is to arise, as leaving *no* issue at his death, and his *leaving issue* who shall die under 23. If the first event happen, i. e. if A. die without leaving issue at his death, the executory limitation is clearly good, as it would have been upon a simple devise over, on this event; but if the second event happen, i. e. if A. leave issue, though they die not only under 23, but under 21, (or any other age actually and in event within the prescribed limits,) it would be bad." It is evident that in the latter case the devise over is *dependent* on the *same contingency* as the intermediate remote limitation, and it consequently shares the same fate; but in the former it arises on a collateral event, and therefore stands independently of such limitation: or in other words, the one is *ulterior,* and the other *alternative* to the prior limitation. See also there quoted the remarks of Lord Alvanley in *Crompe* v. *Barrow,* (4 *Ves.* 681.) *Lewis on Perpetuities,* (*p.* 170,) thus states both rules: "A limitation which will not *necessarily* take effect, if at all, within the time prescribed by the rule against perpetuities, will not be made valid by any events happening subsequently to the time of the creation of the limitation." And in a note he adds: "This rule is subject to an exception as to executory limitations to take effect on *either of two contingencies,* one of which is within and the other without the limits prescribed by the rule against perpetuities; and when, therefore, *events* must be looked at in order to decide the destination of the property in respect to one or other of the ultimate limitations." He then refers to *ch.* 21, (*p.* 501,) where he states both rules again, and after stating the first, adds: "But there is an exception to this rule, in some degree founded on the rule itself. It is, that where a limitation is made to take effect on two *alternative* events, *one* of which is too remote, and the other valid as

within the prescribed limits, although the gift is *void* so far as it depends upon the remote event, it *will be* allowed to take effect *on the happening* of the alternative one." "And gifts of this kind, so far differ from all other limitations in the construction to be put upon them in reference to the laws of remoteness, that the *validity of them depends entirely on subsequent events;* if the *event* be such as gives operation to the *remote* contingency, then the limitation is wholly void. If, on the other hand, the *actual* state of things corresponds to that contemplated by the *alternative valid* branch of the contingency, the gift takes effect." (*See Law Lib. vol.* 52.) The same rule is better and concisely stated in the supplement to the last work. (*Law Lib. vol.* 66.) He says (*p.* 169,) as follows: The general doctrine that if a limitation is made dependent on the happening of either of two events, one of which is too remote, but the other is not, it will take effect if the latter event happens, is supported by the case of *Minter* v. *Wraith,* (13 *Simons,* 52. *See also other cases quoted.*) In *Minter* v. *Wraith,* (*p.* 62,) the vice chancellor so decided, and there said: "It has been decided, (*Longhead* v. *Phelps,* 2 *W. Bl.* 704,) that when there is a limitation to take effect in two events, one of which is too remote, and the other is within the limits and does take effect, the limitation is good." This was an essential point in the case before the vice chancellor. In *Longhead ex dem. Hopkins* v. *Phelps,* (*supra,*) the counsel for the plaintiff argued that the trusts of a term were void, being on too remote a contingency—the dying of the issue male of the marriage without issue generally. But the court, without hearing counsel for the defendent, were clear that the first part of the contingency was good, viz. "in case John and Mary died without leaving issue male"—and as that happened in *fact* to be the case, they could not enter into the consideration, how far the other branch of the contingency might have been supported—and ordered judgment for the defendant.

The whole sixth clause of the will is therefore valid; and if the latter part of the clause were not so, its invalidity would

only affect the share of a child of the testator who should die without leaving any issue, and would not impair any other share, or the devise in the previous part of the 6th clause.

The clause of the will appointing the executors trustees is in these words : "I hereby constitute and appoint (them) the trustees of my daughters and grandchildren during their respective lives." If this be not a trust to receive the rents and apply them to the use of the daughters and grandchildren respectively for life, it would be merely inoperative as to the real estate, and would leave the legal estate in the children and grandchildren, under § 49 of 1 *R. S.* 728. So I am inclined to regard this clause. It does not profess to give the estate itself to the trustees : it appoints them trustees, not of the *estates* of the children, &c. but trustees of the children themselves ; intending to make them curators or guardians over, rather than possessors of, the estate ; but this intention is frustrated by the above section 49.

As to the power to sell the real estate. The will merely "authorizes and empowers the executors" to sell the real estate. It does not direct or order them to do so ; nor does it authorize the sale for any purpose of distribution, or to carry out any trust. It gives a mere power, to be exercised only if found convenient. It is not imperative, and is not a power in trust ; the beneficiaries are the same, whether the estate remains real or be converted into personal : no beneficiary can compel a sale against the judgment or will of the executors. To cause a *conversion* from real to personal, the will should decisively and definitively fix upon the land the quality of money, as Lord Rosslyn said in the converse case as to the conversion of money into land. (*Walker* v. *Denne,* 2 *Ves. jun.* 184.)

If these conclusions be correct, some slight alterations should be made in the judgment below. It should be corrected, where it states that the whole estate of the testator is to be deemed personal estate from the death of the testator, and where it *requires* the executors to sell the real estate

and to hold the proceeds in trust; and also in that part which declares the provision in the will on the event of a child dying without issue to be void. That part also which directs a distribution of the estate after the conversion of the real into personal should be so corrected as to direct a division and partition of the personal and real, with power to the executors to sell the real estate, and the executors should make the partition and division instead of a referee, (unless they be interested,) although this last might not be material. In other respects (and those are the most material) the judgment below should be affirmed, with costs.

[New York General Term, December 28, 1857. *Mitchell*, *Davies* and *Clerke*, Justices.]