Beach, J.
The bill is filed for a judicial construction of the last will and testament of John F. Delaplaine, deceased. There is no ambiguity of expression requiring the ascertainment of testator’s intent, his wishes being plainly expressed and readily understood. The residuary estate is devised and bequeathed to executors in trust, to establish, support and endow an institution, to be located in the city of ¡New York, named “The Delaplaine Institute for the Relief of the Friendless.” The executors are directed to obtain an act of incorporation within ten years after testator’s death, with an expressed desire that they endeavor to obtain the charter as early as practicable. They are also authorized to apply to this court for such order or orders as shall enable them to carry out the plan, by amending the form or expression of the devise, as far as may be necessary, to present it from being illegal. In the event of this disposition proving invalid, a sale of the real and personal estate is directed, the proceeds to be equally divided and paid over to eleven specified charitable and religious institutions. By the ninth and tenth clauses of the will, nine thousand dollars is bequeathed to the executors, in trust, to pay the same within one year after testator’s death, in equal portions of one thousand dollars, to the then treasurers of nine named charitable or religious societies. The questions for adjudication involve the legality of the provision for “The Delaplaine Institute for the Relief of the Friendless,” and if invalid, what is the ultimate legal disposition of the residuary estate 1
The intent of testator to devote the residuum of his estate to charity is clearly indicated, while it is- equally apparent that his plan for the endowment and support of an institution bearing his name is within the statute against perpetuities. There is no limitation upon lives in being at his death, and the suspension of the power of alienation is indefinite, being *289 dependent upon action of the legislature in granting a charter, as well as of the executors in applying for an act of incorporation. The adjudications are so numerous and well defined, it seems almost unnecessary to cite them, upon a conclusion so necessarily resulting from perusal of the eleventh clause. Those most directly in point are specified (Bascom v. Albertson, 34 N. Y. 584; Leonard v. Bell, 1 Supm. Ct. (T. & C.) 608 ; Levy v. Levy, 33 N. Y. 97). A portion of the opinion of the court, by Wright, J., in case last cited, merits quotation. “ It was a condition precedent to the devolution of the estate (which, by the express terms of the will was in the executors), that the congress of the United States, or the legislature of Virginia, should, by their action, signify an acceptance of the trust attempted to be created, and provide for its execution ; or that the Hebrew congregations (in case of the United States or the .State of Virginia declining to accept and execute the particular trust devolved on them) should obtain the necessary legislation, to enable those congregations to hold the property and perform the trust alternately confided to them. The period during which these things are to be done is not legally defined or limited. The power of suspending the alienation of estates in land, and the absolute ownership of personalty is expressly limited by statute upon life. Life must, in some form, enter into the limitation ; and any other term of limitation, however short, is unlawful. Here certain acts arc to be done by congress or the legislature of Virginia, or other States, and the performance of these acts is a precedent condition to the devolution of the estate. Their peri formance is not limited in life. This is a limitation in contravention of the statute. ■ The legislative power might never be exercised. If exercised at any period after the. death of the testator, say within a year, and in that case would be valid, it would be valid, if exercised at the termination of one hundred years. The suspension of the estate would, therefore, in each case, depend, not on the statutory limitation, a life or two lives in being, but upon *290 the' volition of some legislative body to be exercised at some indefinite time, or perhaps never to be exercised. The estate might thus be suspended, forever.”
The benevolent intention of the.testator is apparent and commendable, but its fruition is impossible, because the plan provided, so far as relates to a non-existent institution, contravenes the statute and an unbroken current of judicial interpretation. In my opinion, the eleventh clause of the will is void. The seventh provision of the codicil is also void. This court has no power either to manufacture testamentary instruments, or amend illegal dispositions of property. In Beekman v. Bonsor, 23 N. Y. 298, 311, Comstock, C. J., says: “ As judicial power is exercised in the interpretation of wills, and in establishing them as made by testators, and not in framing them, this ■ difficulty is incurable. In England the ey pres power would be exerted in such a case; and a scheme would be devised by a master of the court of chancery, or the crown would appoint the charity under the sign manual. In either mode of exercising' that power, it rests upon prerogative, and is a creative energy, which, ás we have seen, does not belong to our judicial system.”
The power of sale given under these provisions to the trustees, does not remove or nullify the controlling objection of their invalidity under the statute against perpetuities (Brewer v. Brewer, 11 Hun, 147; Hobson v. Hale, 95 N. Y. 588).
It becomes needful to consider the ultimate disposition of the residuary estate affected primarily by the specified portions of the will. This is controlled by a direction in the eleventh clause, that in event of the residuary disposition before considered being adjudged or proved invalid, or its execution be impossible, either by judicial decisions or from any other cause, that then all the residuary estate so devoted■ should be sold, and the proceeds equally divided, and paid over to eleven specified charitable or religions institutions. Upon- the trial, each of these showed itself *291 competent to take. The first attempted disposition being void, it was so at testator’s death, and in nowise affected any legal devise or bequest to take effect in that event, The word <e then” used in the clause, worked no suspension of power to alienate, but is synonomous with the phrase “ in the event,” previously used. The bequest and devise to the institutions took effect at the testator’s death (Rice v. Barrett, 102 N. Y. 161; Fowler v. Depau, 26 Barb. 224; Schettler v. Smith, 41 N. Y. 328 ; Barnum v. Barnum, 26 Md. 119).
The direction for sale and distribution of proceeds to the institutions, worked an equitable conversion of the realty, for the purposes of division, consequently rents and profits intermediately accruing, became a portion of the fund passing to these beneficiaries, including the lapsed devise to Emily L. Fuller (Lent v. Howard, 89 N. Y. 169; Moncrief v. Ross, 50 N. Y. 431).
A decree is ordered to conform with these views.