An executor and testamentary trustee died during the lifetime of the beneficiary, who was appointed his successor. On her death her executor rendered an account charging her with the corpus of the estate; she having retained the income in her own right as beneficiary. *Held*, that the executor was not entitled to any commissions on the income, but to one-half commissions on the corpus of the estate.

In the matter of the estate of Bethuel McCoy. Proceedings on judicial settlement of Frances D. Wilcox, testamentary trustee. Decree rendered.

D. W. Congdon, for Charles E. Congdon, executor of will of Frances D. Wilcox, deceased.

R. R. Crowley and Arthur R. Conley, for Chester N. Hapgood, Karl N. Hapgood, and J. A. Crowley, as executor of the will of Walter B. Saunders, deceased.

E. D. Northrup, for Frank G. McCoy.

Ansley & Ansley, for Charles B. McCoy.

James O. Clark and W. G. Laidlaw, for Margaret Hart.

DAVIE, S. Bethuel McCoy died May 12, 1876, leaving a will dated August 21, 1872, and a codicil thereto dated August 6, 1875. Such will and codicil were admitted to probate August 6, 1876, and letters testamentary thereupon issued to Charles McCoy, the executor and testamentary trustee therein named. Testator bequeathed to his widow his household furniture, wearing apparel, $1,000 in money, and an annuity of $560 during life; to a son, William McCoy, an annuity of $105 during life; to three grandchildren, Charles, Frank, and Willie, sons of William McCoy, or to their survivor or survivors in case either died before attaining the age of 21 years, the sum of $1,000, share and share alike, one half of the share of each to be paid upon arriving at the age of 21 and the other half at the death of their father. In case the father died before said sons arrived at full age, then each was to receive an annuity of $35 during minority. The fifth item of the will is as follows:

"I give and bequeath to my executor hereinafter named and appointed twelve thousand five hundred dollars in trust, to keep invested at lawful interest, in bonds and mortgages, secured on unincumbered real estate situate in the state of New York of at least double the value of the sum or sums so to be secured thereon, exclusive of buildings thereon, for the purpose of paying the annuities and bequests hereinbefore made, as the same shall become due and payable, and when said trust shall have been fully executed eight thousand dollars of said trust fund is to become a part of my residuary estate and the remainder thereof I give and bequeath to my said executor personally to be received by him in full payment of his services as such trustee also as executor hereinafter mentioned."

By the sixth item of the will the executor was empowered to sell such portion of the real estate as might be necessary to provide the trust fund. The seventh item of the will is as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate both real and personal as follows: To my daughter Maria E. Saunders one third thereof for ever; to my son Charles McCoy the use enjoyment and income of one third thereof, for and during the term of his natural life and at and after his decease to his two children Maggie McCoy and Mary McCoy share and share alike, forever; and the remaining third thereof to my executor in trust for the purpose of paying the income thereof to my daughter Frances D. Wilcox for and during the term of her natural life, annually; and at her decease I give, devise and bequeath to her issue, share and share alike, such income and as each of said issue shall attain the age of twenty-one years, I give, devise and bequeath to it one equal undivided share of the principal of said remaining third, and in case my said daughter Frances D. Wilcox shall

die leaving no issue born of her, which shall attain the age of twenty-one years then and in that case said remaining third of said residuary estate I give devise and bequeath to my daughter Maria E. Saunders and my son Charles McCoy share and share alike."

The material portion of the codicil is as follows:

"I do by this my writing, which I hereby declare to be a codicil to my said last will and testament and to be taken as a part thereof, order and declare that my will is that my said daughter Maria E. Saunders shall have during the term of her natural life have and receive only the rents, issues and profits income, use and enjoyment of said legacy and devise and upon the death of my said daughter Maria E. Saunders, I give, devise and bequeath to her children Grace A. Hapgood and Walter B. Saunders each severally thereof, the sum of two thousand dollars; in money and to my son-in-law Nelson Saunders the remainder of the said share of my daughter Maria E. Saunders forever."

All of the legatees named in the will and codicil survived the testator. The executor and trustee, from time to time, made intermediate accountings of his proceedings as such. On the 10th day of October, 1898, a decree was made by the Surrogate's Court judicially settling the trustee's accounts to that date. By the terms of this decree, he was charged with the sum of $9,118.17, the amount of the trust fund, as determined by the last preceding decree, and with the income derived therefrom, and was credited with various expenses of administration as well as with the net income paid by him to Mrs. Wilcox, the beneficiary. Shortly thereafter, Charles McCoy, the trustee, died, leaving a will which was admitted to probate, and the executrix of his will thereupon procured a judicial settlement of his accounts from the date of the decree last mentioned to the time of his death, and Frances D. Wilcox was then appointed his successor as testamentary trustee, and the trust estate turned over to her. She continued in the administration of the estate to the date of her death, January 6, 1906. She left no issue and never had any who attained the age of 21 years. The executor of her will now presents an account of her proceedings as such trustee for judicial settlement, charging her with the corpus of the trust estate; she having retained in her own right as beneficiary the income therefrom.

The controversy in this case relates to the validity of the attempted beneficial provisions for the possible issue of Mrs. Wilcox and the effect of their invalidity upon the other provisions of the will and codicil. The question is: Did decedent die intestate as to the one-third of the residue of the trust fund, leaving the same for distribution among the next of kin, or did it pass to the residuary legatees in the manner and proportions defined by the will and codicil?

The provisons of the will for the benefit of the issue of Mrs. Wilcox are clearly invalid. Section 2 of the Personal Property Law (Laws 1897, c. 417, p. 507) provides:

"The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a will, for not more than two lives in being at the death of the testator; in other respects, limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real estate."

The provisions of the will referred to are clearly in contravention of the prohibition of the statute quoted. Schlereth v. Schlereth, 173 N. Y. 444, 66 N. E. 130, 93 Am. St. Rep. 616. It is substantially conceded, however, that the beneficial provisions of the will in favor of Mrs. Wilcox herself are valid. In fact, the question of their legality was directly passed upon by the Surrogate's Court upon the various intermediate accountings, and the decrees then made, all parties interested having been duly cited, are res adjudicata on that subject, but the status of the other residuary bequests remains to be determined.

The testamentary intentions of the decedent are unmistakable. He designed and intended, first, to give to Mrs. Wilcox the income during life of this trust fund, and, second, in case of the death of Mrs. Wilcox without issue attaining the age of 21 years, to give to Charles McCoy one half of such fund, absolutely, and the income of the other half to Maria E. Saunders during life, and at her death the principal absolutely to Grace A. Hapgood, Walter B. Saunders, and Nelson Saunders in the proportions named. If decedent's next of kin, other than the residuary legatees named in the will and codicil, are to participate in the distribution of this fund, then the law makes a will for the decedent which he never desired or intended to make. Such a result should not be permitted unless absolutely necessary to meet the legal requirements. It is a fundamental proposition in the construction of wills that the intention of the testator should be ascertained and carried into effect so far as possible. As has been well said, "The intention of the testator is the 'polar star' of testamentary construction." Trunkey v. Van Sant, 176 N. Y. 543, 68 N. E. 946; Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; Mead v. Maben, 131 N. Y. 255, 30 N. E. 98.

When invalid provisions of a will may be eliminated so as to save intact the valid portions and preserve the general testamentary scheme, construction to that effect should be adopted. Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917; Oxley v. Lane, 35 N. Y. 340; Savage v. Burnham, 17 N. Y. 561, 572; Kane v. Gott, 24 Wend. 641, 666, 35 Am. Dec. 641; Park v. Park, 9 Paige, 107, 117; De Kay v. Irving, 5 Denio, 646; Lang v. Ropke, 5 Sandf. 363, 371.

A careful analysis of the cases and statutory provisions will show that no insurmountable obstacle exists to the elimination of the invalid portions of this will and completely effectuating the testator's intentions as to the balance. The clause of the will and codicil under consideration contains definite terms or words of present gift to the residuary legatees. The phraseology is, "in case my said daughter Frances D. Wilcox shall die leaving no issue * * * I give, devise and bequeath" the remaining third of the trust fund to certain persons then living, and specifically named in clearly defined shares and proportions. In this respect this case differs and is clearly distinguishable from Schlereth v. Schlereth, supra. In the case cited the testamentary provision contained no words of present gift to any of the beneficiaries therein named. The bequest was to trustees, with directions to them

to eventually distribute or pay over the estate to persons to be ascertained at the time of distribution. The distinction pointed out is an important one. In the opinion in the Schlereth Case, Martin, J., says:

"It is ob'vious that the income and corpus of the estate was, by 'the testator, intended to be applied and divided among the persons answering the description contained in the seventh clause of the will at the time when such application or division was to be made. As the gift was not a present one, but in the future, it is not to be ranked with those where the payment or division only is deferred, but is one where time is of the essence of the wife."

In Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367, 15 Am. St. Rep. 400, the same distinction is recognized. Bradley, J., in the opinion says:

"The will does not, in terms, give the fund to the children, but directs the executors, in the events mentioned, to pay it to them. The postponement of the time of payment of a gift is not important. That alone will not qualify the absolute character of the ownership. The vesting of it is suspended if some period in the future is annexed to the substance of the gift."

In Matter of Crane, 164 N. Y. 71, 58 N. E. 47, Parker, C. J., recognizes two well-known rules of construction: First, where the only words of gift are found in the direction to divide or pay at a future time, the gift is future, not immediate; contingent, not vested—and cites Matter of Baer, 147 N. Y. 348, 354, 41 N. E. 702; Delafield v. Shipman, 103 N. Y. 464, 9 N. E. 184; Delaney v. McCormack. 88 N. Y. 174, 183. And, second, where the gift is of money and the direction to convert the estate is absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the time of distribution—citing Teed v. Morton, 60 N. Y. 506; Matter of Baer, 147 N. Y. 353, 41 N. E. 702; Smith v. Edwards, 88 N. Y. 92. The court in the opinion then continues:

"It is true that to these general rules of construction there are exceptions, and the cases noting them can be grouped under two heads: First, if the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator, and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift; second, where there are words importing a gift in addition to the direction to the executors or trustees to pay over, divide, or distribute, in such a case the general rule of construction does not govern because the language employed, outside of the direction to divide or distribute, imports a gift, and therefore the situation is precisely as if the will contained words of gift. In other words, to state the proposition in familiar phrase, where from an examination of the whole will it is apparent that it was the intention of the testator that the estate should vest in the beneficiary immediately upon his death, the rule governing where there is merely a direction to divide at a future time must be subordinated to that broader rule which requires that the intention of the testator shall control where it can be ascertained 'with the four corners of the will.'"

In the case at bar, the testator having employed words of present gift in regard to every dollar of his estate, and having selected by name the objects of his bounty and specifically pointed out the precise share or proportion each was to receive, all such legatees being alive at the death of the testator, it should now be held that the title to these various interests vested in the legatees named immediately upon the death

of the testator and probate of his will, and that such vesting as to the one-third under consideration is in no way affected by the attempted provision in behalf of the possible issue of Mrs. Wilcox; she leaving no issue, and such provision itself being absolutely ineffectual and invalid, even if she had. In other words, the invalid portion of the will and codicil should be eliminated and the rest carried into effect. In this way the intention of the testator is fully and completely effectuated. Such conclusion is entirely in harmony with the principle enunciated in the well-considered case of Fowler v. De Pau, 26 Barb. 236, and which principle is adopted as authority in Chaplin on Suspension of the Power of Alienation, p. 275, as follows:

"The rule is that, if on a particular contingency the power of alienation is so suspended that it may possibly exceed the limits prescribed by law, the estate granted on that particular contingency is void; but this defect, which would affect the estate only if that contingency had occurred, can have no effect on it if that contingency does not occur. Then that unlawful estate is not attempted. Accordingly the good alternative estate is sustained, notwithstanding the defect which would have been in the other, if the course of events had created it." Schettler v. Smith, 41 N. Y. 328; Hennessy v. Patterson, 85 N Y. 91.

The decree herein will accordingly provide for a distribution of the remaining trust fund to the residuary legatees named or their respective representatives, as directed by the will and codicil. No commissions can be allowed upon the income of this fund during the time that Mrs. Wilcox was acting as trustee, she being the beneficiary of such income; but one-half commissions should be allowed upon the corpus of the fund.

Decreed accordingly.