CORNELIUS V. CROSS AND ANOTHER, AS SURVIVING EXECUTORS AND TRUSTEES OF THE WILL OF PHEBE JANE CROSS, DECEASED, AND OTHERS, APPELLANTS, *v.* THE UNITED STATES TRUST COMPANY, OF NEW YORK, AS TRUSTEE UNDER SAID WILL, AND OTHERS, RESPONDENTS.

*Foreign will — trusts, valid where the will was made, and void in New York where the trustee resided — action for construction not proper where the money has been paid to the trustee and the foreign executor has been discharged in the foreign State.*

In an action brought for the construction of a will by its surviving executors, and by certain children of the testatrix, beneficiaries thereunder, it appeared that the testatrix was, at the time of her death, a resident of the State of Rhode Island; that her will was proved and letters testamentary were issued there; that the will, among other things, gave to the defendant, the United States Trust Company of New York, certain bonds, upon trusts valid in Rhode Island, but in some respects, as alleged in the complaint, violative of the New York statute as to perpetuities; that, in 1885, the said executors delivered said bonds to said trust company, fully performed their duties as such executors, and were duly discharged by the proper court in Rhode Island.

*Held,* that the action could not be maintained.

That if, as alleged, the trust company, as a New York corporation, was incompetent to take the property, or if some of the trusts were void under the laws of New York, the proper time to raise these questions was before the will was executed and the property was turned over to the trust company by the Rhode Island executors. (Per BARRETT and BARTLETT, JJ.)

That where the question is properly raised the courts of this State will not permit a trust to be administered here which is contrary to the laws of this State. (Per Van Brunt, C. J., and Bartlett, J.)

*Semble,* that before foreign executors can sue in a court of this State for a construction of a foreign will, said will must be proved in this State and ancillary letters be issued to them here.

Appeal by the plaintiffs, Cornelius V. Cross and Norman F. Cross, as surviving executors of the last will and testament of Phebe Jane Cross, deceased, and Cornelius V. Cross, Norman F. Cross and Ethelinda C. Horton, individually, from a judgment, entered in the office of the clerk of the city and county of New York on the 23d day of June, 1890, dismissing their complaint, with costs and allowances, after a trial by the court at the New York Circuit.

The action was brought to obtain a judicial construction of certain provisions of the will of Phebe Jane Cross, deceased, which created certain trusts in the defendant, the United States Trust Company, amounting to over seven hundred thousand dollars, represented by railroad mortgage bonds which had been delivered into the hands of the trust company.

The testator had her domicile in Rhode Island. She made her will there, and it is, in all its provisions, valid by the law of that State. When the testatrix died, in 1878, her will was admitted to probate in the State of Rhode Island, and for seven years the plaintiffs, the executors, themselves administered these trusts under the supervision of the courts of that State. It was conceded that the trusts, though valid under the laws of Rhode Island, are in part or wholly void under the laws of the State of New York. The fund in dispute, consisting entirely of personal property, is in the possession of the trust company, a New York corporation.

The provisions of the will are set forth in the dissenting opinion of Van Brunt, P. J.

*E. C. James,* for the appellants.

*E. Sheldon,* for the United States Trust Company, respondent.

*N. Quackenbos* and *W. Fullerton,* for John H. Morse and Grace G. Minton, respondents.

*N. Quackenbos,* as guardian *ad litem,* for the infant Ethelinda Morse, respondent.

*Thomas Jackson,* for Sophia V. Morse, respondent.

BARRETT, J.:

I am unable to concur in the conclusion arrived at by the presiding justice. I agree, however, that the Rhode Island executors have no standing to obtain a judicial construction in the courts of this State of a Rhode Island will. But the presiding justice sustains the complaint because certain individual plaintiffs are joined with these executors. The question at once arises, who are these individual plaintiffs and what rights are they here seeking to enforce? They are children of the testatrix and they make a direct attack upon certain of the trusts created by her will. If these trusts are declared to be void, then these individual plaintiffs claim to take under the residuary clause of the will. Their complaint proceeds solely upon this theory. The trusts are alleged to contravene our statute against perpetuities, and judgment is demanded that the *corpus* of the trust estate be delivered over by the trustee to the Rhode Island executors for distribution under the residuary clause of the will. We are thus asked not to aid the trustee to execute the trust, but directly and affirmatively to destroy the trust. We are asked to do this, too, with regard to a trust perfectly valid by the law of the testatrix's domicile, and having done it to turn over the *corpus* of the destroyed trust estate to the foreign executors for distribution under the terms of the very will which we shall have thus emasculated. It must not be overlooked in this connection, that so far as the executors are concerned, the will has long since been fully executed. The executorial duties were, in fact, completed in 1885, and the estate was then fully administered. The *corpus* of this trust estate had previously been reduced to possession, and in July, 1885, it was delivered by the executors to the trustee named in the will. In November, 1885, the final account of the executors, showing all their proceedings, was presented to the proper probate court of Rhode Island, and in January, 1886, such final account was duly allowed. Mr. Norman F. Cross testified that thereupon the executors ' had their releases from the probate clerk of Rhode Island at Westerly." He added that the other provisions of the will had been carried out, so that " *there is nothing remaining under the will.*"

For the last five years, then, the executors have been *functi officio*, and the United States Trust Company had pursued the

even tenor of its way as a legatee under the trust directions contained in the will. If this trustee were incompetent to take the property so bequeathed to it in trust, or if some of the trusts were void under the laws of this State, the proper time to raise that question was before the will was executed, and the property turned over to the trust legatee by the Rhode Island executors. The question discussed in the cases in this State, to which we have been referred (notably, *Chamberlain* v. *Chamberlain*, 43 N. Y , 424 ; *Manice* v. *Manice*, Id., 303, and *Despard* v. *Churchill*, 53 id., 192), was whether the legacies should or should not be paid over in the first instance to the legatees. In no case does there seem to have been an attempt, after payment, to compel the legatee to restore his legacy upon the theory that, if personal, it should not have been paid to him at all, or, if in trust, that so much of the trust as was valid under our laws had terminated. Here, then, we have a trust estate created by a Rhode Island will, and entirely valid by the law of the testatrix's domicile, sought not to be frustrated in its origin, but to be destroyed while in due process of execution, because of the incident that the trustee happens to be a New York corporation. The fact that the property, which is entirely personal, may be here, and that the beneficiaries live here, can have no bearing upon the question. The residence of the beneficiaries is wholly immaterial ; and as personal property has no locality, the law of the owner's domicile governs its transmission either by last will and testament or by succession in case of intestacy. Indeed, if the testatrix had bequeathed this property to a Rhode Island trust company upon these same trusts, we would hardly have heard of these present complaints, even if the foreign trust company had thought it more prudent to keep the bonds in one of our safe deposit companies, and to send an agent here semi-annually to detach the coupons and distribute the proceeds among the local beneficiaries. But what difference would there be in principle if the testatrix had bequeathed the property, still upon the same trusts, to a Rhode Island *individual* who should subsequently come here to live and bring the property with him ? Or to a Massachusetts individual who should do the same thing ? Or even to a New York individual who should keep the property locked up in a Boston safe deposit company ? The fallacy of the position, as it seems to me, lies mainly in regarding the locality of the subject, that

being exclusively personal property, rather than the domicile of the testatrix. In the case at bar the testatrix certainly conferred upon the trustee the legal title to the property in question. The trust company is thus the owner of such property, subject to its trust duties. Shall we, notwithstanding an undoubted legal title, take property from its owner and hand such property over to others? If so, by what authority? And to whom shall we hand it? And for what purpose? The only authority suggested is our statute against pepetuities. But it was held, both in *Chamberlain* v. *Chamberlain* and *Despard* v. *Churchill* (*supra*), that it is no part of the policy of this State to interdict perpetuities or accumulations in another State, and in *Despard* v. *Churchill* it was explicitly held that, although a foreign will disposes of property in this State, by provisions which are invalid here as running counter to our statute against perpetuities, yet the courts of this State may not hold the bequest void when it is valid by the law of the State by which the disposition of the property is to be governed. Our courts may, it was intimated, refuse their aid to enforce or administer here such a bequest. But this aid is not now sought. The trustee, in fact, needs no such aid, and the plaintiffs' sole demand is that we hold the bequest to be void, and take the subject thereof out of the hands in which it is duly and legally vested. This would be distinctly contrary to the principle enunciated in *Despard* v. *Churchill*, and there is nothing to warrant it in *Chamberlain* v. *Chamberlain*. In the latter case it was held that a foreign corporation may take personal property under wills executed by citizens of this State, if by the laws of its creation it has authority to acquire property by bequest. The reasoning which led to this conclusion, while recognizing the rule that the validity of particular bequests will depend upon the laws of the domicile of the legatee, does not conflict with the doctrine of *Despard* v. *Churchill*, as to the action or non-action of the courts of such legatee's domicile in enforcing or annulling a bequest invalid by its laws. Next, to whom are we asked to give this property? Not, certainly, to the next of kin? Even the individual plaintiffs have not had the hardihood to claim the distribution of the property *under our laws as in case of intestacy*. It was impossible at this point to ignore the Rhode Island will, and so, after insisting that it shall be tampered with, where the provisions run counter to our

statute law, the plaintiffs would utilize it to find some object in whose favor a successful judgment may run. Thus, the executors, who have long since been released, are to be recalled into being by the courts of this State in order that there may be some one to whom the subject of the destroyed trust may be required to be delivered. This is a most anomalous suggestion. These executors, when officially alive and in the performance of their functions, delivered this very property over to the trustee under the express terms of the will. After the lapse of five years, having meanwhile been judically released as executors by the courts of Rhode Island, they are to be asked to take the same property back. But suppose they should refuse to accept it? Suppose they should say, what have we to do with this property, what would become of our decree? And what position would the trust company then occupy? If, however, the executors did accept the property, what could they do with it? Take it to Rhode Island and ask the instructions of the courts of that State? It is inconceivable that such a course would alter the substance of the situation. It might result in a change of agency or trusteeship, but that is all. It surely would not result in the courts of Rhode Island altering the testator's will. Those courts certainly would not permit the distribution of the property under the residuary clause merely because we had ordered the property out of the State, and had forbidden the execution within our borders of a trust created in their State by a person domiciled there, and perfectly valid under their laws. The courts of that State would probably say to the executors: We long since approved of your course in delivering this property to the trust company as required by the will, and thereupon we released you from your executorial functions. By what authority have you now officiously attempted. to aid the courts of another State in subverting the valid testamentary purposes of a citizen of this State? You had no right to accept this property. But as it is here we will give it hospitality, appoint a competent trustee, and see that it is applied strictly in accordance with the will of the testator.

I think, therefore, that the complaint was properly dismissed, but not for the reasons assigned by the learned judge at Special Term. I agree with the presiding justice that there is no just distinction, with regard to the question under consideration, between charitable

legacies and legacies of any other kind.   And I do not agree with the learned judge, at Special Term, in the suggestion that the proper course for the court is to refuse to assume jurisdiction, and " to remit the property, and if needs be, the persons to the Rhode Island Courts." How this could be done, without assuming jurisdiction, is not apparent.   I place my judgment, for affirming the dismissal of the complaint, upon the distinct ground that we cannot, by an affirmative decree, directly nullify a trust bequest in due process of execution, which is valid by the law of the testatrix's domicile. This we would have to do before the property could be remitted to the Rhode Island jurisdiction.   And just there is the distinction between this case and *Despard* v. *Churchill*.   If the subject of the present trust had never been reduced to possession by the executors, or administered, the disposition made in *Despard* v. *Churchill* might have served as a guide.   The assets which in that case were remitted to the California executors were so remitted *expressly for administration*.   It was upon that theory that the court distinguished between directly aiding the execution of a bequest, which is in violation of our statute law, and directly holding such bequest to be void. The difficulty was there avoided by simply remitting to the California executors, for administration in that State, *assets which had not yet been reduced to possession*.   Thus, the court neither directly aided in carrying out the objectionable bequests, nor in defeating them.   It neither held them to be valid nor void.   It simply remitted them to their proper destination in the first instance, and left the rest to the law of California.   Here, however, the assets were reduced to possession by the Rhode Island executors and fully administered.   The assets were delivered in due course and in execution of the will to the trust legatee.   It is idle to talk *of remitting* them anywhere thereafter.

In my opinion, the judgment appealed from should be affirmed, with costs.


BARTLETT, J. :

I agree with the presiding justice that where the question is properly raised the courts of this State will not permit a trust to be administered here which is contrary to the laws of this State.   On the other hand, it seems to me that Mr. Justice BARRETT is right in hold-

ing that neither the Rhode Island executors nor the individual plaintiffs have any standing to question the validity of these trusts in this jurisdiction and at this time. As he well says, if the trustees were incompetent to take the property in trust, or if some of the trusts were void under the laws of this State, the proper time to raise that question was before the estate had been administered and the property turned over to the trust legatee by the executors. Furthermore, I am at a loss to see what benefit the plaintiffs could derive from any judgment which could properly be rendered, even if they are entitled to relief. If we send the fund back to Rhode Island, and I think we are bound to do so if we adjudge the trusts invalid, the courts there would simply appoint a Rhode Island trustee to do in that State just what the United States Trust Company is doing here, and the plaintiffs would be no better off than they are now.

I am in favor of affirming the judgment on the ground that the plaintiffs did not make out a case entitling them to any relief.

VAN BRUNT, P. J. (dissenting):

This action was brought apparently to obtain a judicial interpretation and construction of a certain portion of the will of Phebe Jane Cross, deceased, which creates a trust in the defendant, the United States Trust Company, of certain property now in the hands of said company. Two of the plaintiffs sue as executors and trustees of the will of Phebe J. Cross, deceased, and the remaining plaintiffs, being three in number, sue individually.

It is conceded that, at the time of her death, Phebe Jane Cross, was a resident of the State of Rhode Island and her will was proved there, and letters testamentary upon such will were issued by a probate court in Rhode Island to the executors therein named, two of whom are the plaintiffs, the third having since died.

What standing these Rhode Island executors can have in the courts of this State to procure the construction of a Rhode Island will we are unable to understand.

It is no answer to this suggestion to say that the property is here; because, in order that they should have any right to the property as a matter of right to be enforced by the courts of this State, it would be necessary that the will should be proved in this State and ancillary letters issued.

No such point, however, seems to have been made during the progress of this litigation; and as there are other individual plaintiffs who, perhaps, under the views at which we have arrived in reference to this controversy, might maintain an action, it may not be necessary to pursue the subject further.

The facts of the case appear to be that the testatrix, while a resident of the State of New York, executed the will in question. The personal property, which is the subject-matter of the trust to be hereinafter considered, was within this State; subsequently the testatrix removed to Rhode Island, and while a resident of Rhode Island died leaving issue, all of whom were residents of New York, and her will, with the codicil thereto, was admitted to probate in said State of Rhode Island, and letters testamentary were issued by the probate court of Rhode Island to the executors therein named, who entered upon the execution of their trusts, and one of whom has since died.

The provisions of the will, which it is necessary to consider in the disposition of this case, are embraced within the eighth article thereof, which is as follows:

"ARTICLE 8. I give and bequeath to the United States Trust Company of the city of New York ninety of said registered bonds, remaining after discharging the above bequests, and so many of the consolidated mortgage bonds of the New York and Harlem Railroad Company, dated the 1st day of May, in the year one thousand eight hundred and seventy-two, and payable on the first day of May, in the year one thousand nine hundred, and secured by a mortgage upon the road of the last-mentioned company to the Union Trust Company, as amount at their par value to two hundred and fifty thousand dollars, to have and to hold, in trust for the uses and purposes following, namely, to collect and receive the interest and income thereon until the payment of the principal; and upon such payment to invest, and keep invested, the proceeds, in safe interest-paying securities, and to collect and receive the interest or income upon the last-mentioned securities, and after deducting the charges of said trustees as follows, viz.: One-quarter of one per cent on the amount above bequeathed for receiving the same; two per cent upon the amount of interest or income thereon for collecting and paying out the same pursuant to the following pro-

visions ; to pay from said interest and income as collected as follows, to wit :

*Item* 1. To my husband, James M. Cross, during his life, the interest and income upon so many of said bonds and securities, in this article mentioned, as amount, at their par value, to the sum of one hundred and fifteen thousand dollars, and upon and after his death to pay the interest and income upon said last-mentioned bonds and securities over to my grandchildren, share and share alike, until the death of my last surviving child, and upon that event to pay the principal as hereinafter directed.

*Item* 2. To each of my three above-mentioned children, viz.: Cornelius V., and Norman F. and Ethelinda, during his or her life, the interest or income upon so many of said bonds or securities, in this article mentioned, as will amount, at their par value, to one hundred and twenty-one thousand two hundred and fifty dollars, and to pay to my said daughter, Sophia V. Morse, during her life, the interest or income upon so many of the bonds or securities, in this article mentioned, as will amount, at their par value, to two hundred and twenty-one thousand two hundred and fifty dollars.

*Item* 3. If either of my said children shall die leaving no children, then to pay the interest or income which he or she would have been entitled to receive if living, pursuant to the provisions of this will, to my surviving children, share and share alike, and the children of any deceased child, the last-mentioned children to take, as a class, the share that the deceased parents would have taken if living.

*Item* 4. If either of my said children shall die, leaving children, then I direct the said trustee to divide the principal from which the parent shall have received the interest or income, as above provided, into as many parts as there are children of such parent surviving, and after deducting charges for paying out the principal, as hereinafter provided, to deliver one part to each of said children who shall have attained the age of twenty-five years, to have and to hold to him or her, his or her heirs and assigns forever.

And if there is any part or parts remaining, to appropriate and set aside one part for each of the remaining of the last-mentioned children, and to pay the interest or income, upon the part so set aside, to the child for whom it is appropriated, until said child

reaches the age of twenty-five years, and upon his or her reaching said age to pay him or her so much of said part as shall remain after deducting charges as hereinafter provided, to have and to hold to him or her, and to his or her heirs or assigns forever, and if any of said last-mentioned children should die before reaching said age, then, after deducting charges as aforesaid, to pay his or her said part to his or her surviving brothers or sisters, or to either if there is but one surviving, and if all the children of the deceased parent above and in this item referred to, shall die before arriving at said age, then, to pay the sum or sums in this item referred to, to which he or she, or they would have been entitled if living at said age, over to my children then living, share and share alike, and if none of my children shall then be living, then to pay said sums over to surviving grandchildren, share and share alike, to have and to hold to them, him or her, their, his or her heirs and assigns forever.

*Item* 5. Upon the death of my last-surviving child, I direct the said trustee to divide all of said bonds and securities then remaining in its possession, including those from which my husband, the said James M. Cross, shall have derived the interest and income above and in item 1 of article 8 provided, into as many parts as I shall then have grandchildren living, and after deducting charges for paying out the principal, to pay and deliver one part to each one of the grandchildren who shall have reached the age of twenty-five years, and if there are any of said grandchildren remaining, to appropriate and set aside one from the remaining of said last-mentioned parts for each of the last-mentioned grandchildren, and to pay the interest and income upon the parts so set aside to the grandchild for whom it is appropriated, until he or she reaches the age of twenty-five years, and upon his or her reaching said age to pay to him or her so much of said part so appropriated to him or her as remains after deducting charges for paying out the principal, to have and to hold to him, her or them, and to his or their heirs and assigns forever.

And if after the death of my last surviving child either of said grandchildren shall die before reaching said age, then I direct the said trustee, after deducting charges for paying out the principal, to divide and pay over the remainder of his or her said bonds and securities to my remaining grandchildren, share and share alike, to

have and to hold to him, her or them, his, her or their heirs and assigns forever."

It appears that the executors have performed their duties and that they have handed over to the United States Trust Company, the trustee named in said will, the property mentioned in the eighth article thereof in trust for the purposes therein set forth, and the company has accepted such property and entered upon the performance of the trust and still continues to perform the same. It was conceded that the trusts in question are valid according to the laws of Rhode Island, and that some of the trusts in said eighth article are void according to the laws of the State of New York; and in this action the court was asked to determine which law would apply and to declare these trusts void because they were governed by the laws of New York; and also to advise the said executors as to their duties in the premises. The court refused to perform these functions and dismissed the complaint, and from the judgment thereupon entered this appeal is taken.

We think, therefore, that the question presented is as to what are the powers and duties of this court in respect to property situate within this jurisdiction to be administered by a corporation created by the laws of this State upon trusts created in a will made by a resident of Rhode Island legal in that State, but which contravene in some respects the laws of this State. The rule, in reference to the cases of voluntary transfer, of intestacy, of devises under a will, still remains that which was laid down by Chancellor Kent, namely: "It has become a settled principle of international jurisprudence and one founded on a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to and distribution of personal property wherever situated, is governed by the law of the country of the owner's or intestate's domicile at the time of his death, and not by the conflicting laws of the various places where the goods happened to be situated."

There is a modification, however, to the broad rule above stated, which it is necessary to point out; because it is also well settled that where the law of the domicile of the owner or testator or intestate conflicts with the public policy of the State in which the property is situate in respect to its transfer, the latter will prevail..

It seems to us, after an examination of the numerous authorities

to which our attention has been called, that the court in the case of *Chamberlain* v. *Chamberlain* (43 N. Y., 432), has stated with remarkable clearness and precision the rules of law applicable to the question under discussion; and our attention has been called to nothing which in any way conflicts with the principles which are there laid down; but, upon the contrary, ever since their enunciation they have been consistently followed and applied.

In the case of *Chamberlain* v. *Chamberlain* the question was involved whether a testator residing in New York, by a will executed and proved in New York, could bequeath to a Pennsylvania corporation a legacy which such corporation would be entitled to claim notwithstanding the fact that under the laws of the State of New York such a corporation had no power to take.

In the course of the opinion the court say: " The Centenary Fund Society is a foreign corporation having its existence under the laws of Pennsylvania and located within that State. The existence, however, of corporations organized under the laws of a sister State is recognized by the courts of this State, and they may take property here under wills executed by citizens of the State, if by the law of their creation they have authority to acquire property by devise or bequest. (*Sherwood* v *Am. Bible Society*, 1 Keyes, 565; *Harris* v. *Same*, Ct. of Ap., 4 Abb. [N. S.], 421.) That the corporation named was erected for charitable purposes and the bequest to it is for a charity is not material if the bequest is not for some other reason invalid."

" The courts of this State will not administer a foreign charity, but they will direct money devoted to it to be paid over to the proper parties leaving it to the courts of the State within which the charity is to be established to provide for its due administration and for the proper application of the legacy. (Hill on Trustees, 468; 2 Story on Eq. Jur., § 430; *Provost of Edinburgh* v. *Aubery*, Ambler, 236; *Burbank* v. *Whitney*, 24 Pick., 154; *Atty.-Gen.* v. *Lepine*, 2 Swanst., 181.) There is no objection to the form or manner of execution of the will or the capacity of the testator. Neither is it claimed that by the terms of the instrument the property would not pass as claimed by the legatees. The law of the testator's domicile controls as to the formal requisites essential to the validity of the will as a means of transmitting property, the

capacity of the testator and the construction of the instrument. (*Andrews* v. *Herriot*, 4 Cow., 517; *Holmes* v. *Remsen*, 4 Johns. Ch., 469; *Parsons* v. *Lyman*, 20 N. Y., 103.) Personal property has no locality, and, therefore, the law of the domicile of the owner governs its transmission either by last will and testament or by succession in case of intestacy. (2 Kent's Com., 429; *Moultrie* v. *Hunt*, 23 N. Y., 394; *Lawrence* v. *Kittredge*, 21 Conn., 577.)

"But if, within the *lex domicilii*, a will has all the forms and requisites to pass the title to personalty, the validity of particular bequests will depend upon the law of the domicile of the legatee and of the government to which the fund is, by the terms of the will, to be transmitted for administration, and the particular purposes indicated by the testator. Whatever may be the law of Pennsylvania, a testator domiciled in that State cannot establish, by bequests of personalty to citizens or corporations of this State, a charity in trust to be administered here inconsistent with the policy or the laws of this State. A gift by will of a citizen of this State to a charity or upon a trust to be administered in a sister State, which would be lawful in this State, the domicile of the donor, would not be sustained if it was not in accordance with the laws of the State in which the fund was to be administered."

"Bequests in aid of foreign charities, valid and legal in the place of their existence, will be supported by the courts of the State in which the bequests are made." (Hill on Trustees, 457.)

"If the legatee, whether a natural or artificial person, and whether he takes in his own right or in trust, is capable by the law of his domicile to take the legacy in the capacity and for the purposes for which it is given, and the bequest is in other respects valid, it will be sustained irrespective of the law of the testator's domicile, subject, however, to this qualification, that if the law of the testator's domicile, in terms, forbid bequests for any particular purpose, or in any other way limit the capacity of the testator in the disposal of his property by will, a gift in contravention of the law of the testator's domicile would be void everywhere. But so far as the validity of the bequests depends upon the general law and policy of the State, affecting property and its acquisition generally, and relating to its accumulation and a suspension of ownership and the power of alien-

ation, each State is sovereign as to all property within its territory whether real or personal."

"It is no part of the policy of the State of New York to interdict perpetuities or gifts in mortmain in Pennsylvania or California. Each State determines those matters according to its own views of policy or right, and no other State has any interest in the question; and there is no reason why the courts of this State should follow the funds bequeathed to the Centenary Fund Society to Pennsylvania to see whether they will be there administered, in all respects, in strict harmony with our policy and our laws. The question was before the court in *Fordyce* v. *Bridges* (2 Phillips, 497), upon the bequest of a fund in England to be invested in a Scotch entail. Lord COTTENHAM says: "An objection was made that the bequest of a fund to be invested in a regular Scotch entail was void as a perpetuity. The rules acted upon by the courts in this country, with respect to testamentary dispositions tending to perpetuities, relate to this country only. What the law of Scotland may be upon such a subject the courts of this country have no judicial knowledge, nor will they, I apprehend, inquire. The fund being to be administered in a foreign country is payable here, though the purpose to which it is to be applied would have been illegal if the administration of the fund had been to take place in this country. This is exemplified by the well-established rule in cases of bequests within the statute of mortmain, a charity legacy, void in this country under the statute of mortmain is good and payable here if for a charity in Scotland."

It is to be observed that the court, in considering this question, distinctly state that the fact that the bequest under consideration was for a charity was entirely immaterial, and that throughout the opinion the idea is advanced, and is dwelt upon, that a gift by will of a citizen of this State, upon a trust to be administered in a sister State, which would be lawful in this State, the domicile of the donor, will not be sustained if it was not in accordance with the law of the State in which the gift was to be administered. Therefore, applying this rule to the case at bar, a trust will not be administered in this State which is created contrary to the laws of the State In other words, a foreigner will not be permitted to do that which is denied to a resident. A person living in Rhode Island will not be

permitted to erect a trust to be administered by a trustee, within the State of New York, for the benefit of *cestuis que trust*, residing within this State, in defiance of the laws of the State.

It seems to have been considered by the learned judge, who tried the case in the court below, that because the questions involved in the case of *Chamberlain* v. *Chamberlain* related to a charity that, therefore, some other or different rule applied. But this cannot be so, because it was a principle, which was being enunciated, applicable to legacies of every description, whether for charitable purposes or upon any other trust. It was recognizing the right of a citizen of the State to erect a trust for the benefit of citizens of another State in accordance with the laws of that State, and it denied the right of a citizen of another State to erect a trust within the State of New York, for the benefit of residents of the State of New York in defiance of the laws of the State of New York.

It seems to us to be a strange argument to hold that a man in Jersey City can erect a perpetuity in the State of New York of property within the State of New York, by a trustee in the State of New York, for the benefit of a *cestui que trust* living in this State, in defiance of the laws of this State which prohibit the erection of such trust.

It appears clear to us, therefore, that such portions of this trust as are void according to the laws of the State of New York cannot be administered by the trustee here, and it is immaterial whether such trustee is a corporation or an individual. The inhibition to administer a trust contrary to the laws of the State would be equally binding in either case.

Under these circumstances, it becomes necessary to examine the will, or that portion of the will which is the subject of consideration in this action, to determine as to what parts of the trust attempted to be created contravene the laws of this State. And in the consideration of this question the principle must be borne in mind that where a limitation is made to take effect on two alternative events, one of which is too remote, and the other valid as within the prescribed limits, although such limitation is void so far as it depends upon the remote event, it will be allowed to take effect on the hap-

pening of the alternative one. (*Schettler* v. *Smith*, 41 N. Y., 328 ; *Kennedy* v. *Hoy*, 105 id., 134.)

Applying this principle, it would appear that the primary trusts created by the article in question are valid ; and that all the other subsequent provisions are invalid. It is suggested that, in the event of the death of a child of the testatrix leaving issue, the bequest to such issue is good, the limitation upon the right of enjoyment of such bequest only being invalid. This cannot be true, because an estate does not vest absolutely in the holder of an estate for life or years, because the limitation over is invalid, and this would be the result of holding the bequest to issue valid, enabling them to take in defiance of the provisions of the will, which made such right to depend upon attainment of the age of twenty-five years. It follows, therefore, that, upon the termination of each of the primary trusts, the property held upon such trust goes to the executors to be administered by them under the laws of Rhode Island, the domicile of the testatrix and the place of their official domicile ; and as to that portion of the property of which James M. Cross was to receive the income during life, the trust ended at his death, and the trustee should transmit the property to the Rhode Island executors.

This transfer of the property to the executors in Rhode Island is entirely in harmony with the principles laid down in *Despard* v *Churchill* (53 N. Y., 192), where the court directed personal property within this State, under similar circumstances, to be transferred to the executors in California to be appropriated to a trust void under the laws of this State.

The courts of this State have no power to decree a distribution of such portions of the fund, as they have no control over the executors and no control over the estate as such, and only can prevent by their decree the performance of a trust in defiance of the laws of this State. And all that they can do after having ended the trust, so far as performance in this State is concerned, is to remit the estate to the source from whence it came.

We think, therefore, that the court below erred in dismissing the bill, and should have retained the same for the purpose of rendering judgment in accordance with the views herein expressed.

The judgment should be reversed and a new trial ordered.

Judgment affirmed, with costs.