In the Matter of the Estate of HEINERICH VON DEILEN, Deceased.

Surrogate's Court, Kings County, March 25, 1935.

*Wingate & Cullen* [*Conrad Saxe Keyes* of counsel], for the petitioners.

*Otis S. Carroll,* special guardian for infants.

*John G. Tholke, Jr.,* for the Fritz Reuter Home for Aged People.

*Lydecker, Dempsey & Voss* [*Vincent S. Haneman* of counsel, member of the New Jersey bar], for Doretta M. Von Deilen.

*Paul G. Gravenhorst*, for the Wartburg Orphans Farm School.

WINGATE, S. The will, interpretation of which is here sought, was executed on April 21, 1910, and was admitted to probate in the Surrogate's Court of the county of Morris, State of New Jersey, on February 6, 1917. On the tenth of March following, a decree of this court, made pursuant to the provisions of section 44 of the Decedent Estate Law, directed its record here as a will of real property. The sole question presently in issue concerns the devolution of certain real property situated in New York city, devised under its " second " item.

A preliminary consideration presents itself respecting the jurisdiction of this court to entertain a proceeding for the construction of this document, in view of the fact that its formal probate was not accomplished in this court. No objection on this score has been interposed by any party, but the court itself is, of course, primarily interested in the question, since if jurisdiction to decide a matter is not inherently vested in a tribunal, authority cannot be conferred upon it by acquiescence or consent of the parties. (*Matter of Morris*, 134 Misc. 374, 376; *Matter of Welton*, 141 id. 674, 676, 677.)

Subdivision 8 of section 40 of the Surrogate's Court Act grants power to the surrogate " to determine the validity, construction or effect of any disposition of property contained in any will *proved* in this court." (Italics not in original.) The question, therefore, arises as to whether the effectuation of the procedure contemplated by section 44 of the Decedent Estate Law renders a will " proved " within the intendment of this enactment. This section provides in substance that a will affecting real property in this State, duly executed in conformity with the laws of this State by a non-resident thereof, which has been duly admitted to probate in the locality where the decedent resides, may be recorded in the office of the surrogate of any county in this State where such real property is situated upon compliance with certain specified formalities.

It is obvious from a perusal of the specified requirements for such record that the determination of whether or not this course may be permitted in any given instance contemplates the performance of a judicial act in passing upon the validity of execution of the instrument, and of its establishment as one sufficient to convey real property in accordance with the laws of this State. It is, therefore, in spirit and in fact a proving of the will to like extent though by a different method from that in vogue respecting

the usual will of a domestic decedent. The holdings of the few cases which have adjudicated the question are in accordance with this view. (*Bromley* v. *Miller*, 2 T. & C. 575, 576; *Matter of Langbein*, 1 Dem. 448, 450; *Matter of Nash*, 37 Misc. 706, 708.) The court accordingly determines in the affirmative its jurisdiction to entertain the proceeding for construction.

It has been demonstrated that at the time of the execution of the document the decedent's only relatives consisted of a son, George, who was then approximately fifty years of age, childless and unmarried, and five grandchildren, the issue of a deceased son, William, and that these six persons, together with William's widow, for whom the testator apparently entertained a fatherly affection, resided with him. One of the grandchildren married shortly before, and one soon after, his decease, and both have since died, each leaving two children. These, the remaining three grandchildren, and the mother of the latter, are still living. The son, George, married at some unidentified time after the testator's death and has now died without issue.

The question of interpretation which is presently propounded concerns the meaning and validity of the second item of the will, which, shorn of superfluous and presently irrelevant phraseology, reads as follows:

"*Second.* I hereby * * * devise * * * the real estate * * * known as 450 Fulton Street * * * Brooklyn * * * unto my executors and trustees * * * in trust, for the following uses * * * viz: To collect the rents * * * to divide the rents * * * into two equal parts * * * and to pay one part * * * thereof to * * * George H. von Deilen during * * * his * * * life, and upon his death leaving lawful issue * * * such * * * portion shall be held in trust and * * * used for the support * * * of such issue and as each child shall attain the age of 21 years, to pay direct to him the *pro rata* portion of said * * * fund * * *. If * * * George * * * shall die without leaving lawful issue him surviving, * * * the share * * * of the net rents * * * which I have * * * set apart for him shall be held in trust * * * and * * * invested * * * and, together with the principal of said trust, paid over to the children of my deceased son, William, * * *, when and as each child shall arrive at the age of twenty-one years. The share of any deceased child dying without issue to be distributed equally among the survivors and the child of any deceased child to take its parent's share.

" The other part   *   *   *   of the net rents   *   *   *   I order my executors   *   *   *   to use for the following objects   *   *   *

" A. To pay   *   *   *   taxes   *   *   *   on the premises 242 *   *   *   South Street, Morristown.

" B. To pay   *   *   *   bills for the   *   *   *   education of the children of   *   *   *   William.   *   *   *

" C. To pay to Doretta   *   *   *   widow of   *   *   *   William *   *   *   so long   *   *   *   as she shall remain his widow,   *   *   * $325 per   *   *   *   month   *   *   *   but in the event of the death or remarriage of   *   *   *   Doretta   *   *   *   to pay *   *   *   said sum   *   *   *   to the   *   *   *   guardian of said children.   *   *   *

" D. To pay   *   *   *   to each child   *   *   *   of   *   *   * William   *   *   *, when he   *   *   *   shall attain   *   *   *   21 years, the *pro rata* portion of said share or fund found to be due him   *   *   *, said children shall share the portion herein set aside for them from the net income of said Brooklyn real estate, equally,   *   *   *   the share of any child dying without lawful issue to be distributed equally among the survivors and the child of any deceased child to take its parent's share.

" The gift of the aforesaid income to   *   *   *   George   *   *   * and to my grandchildren, the issue of   *   *   *   William, is *   *   *   made upon the following   *   *   *   conditions,   *   *   *, it being my intention to provide support   *   *   *   for   *   *   * George   *   *   *   and my grandchildren.   *   *   *

" When the youngest child of   *   *   *   George   *   *   *   shall arrive at the age of 21 years, or in case of his death without lawful issue, when the youngest child of   *   *   *   William   *   *   * shall arrive at the age of 21 years, this trust shall cease   *   *   * and I   *   *   *   devise the said premises   *   *   *   to the lawful issue of   *   *   *   George   *   *   *   and William   *   *   *   *per stirpes*   *   *   *. In case George   *   *   *   dies without   *   *   * issue   *   *   *   I devise the whole of said premises   *   *   *   to the children of   *   *   *   William   *   *   *   equally,   *   *   * the share of any child dying without   *   *   *   issue to be distributed equally among the survivors and the child of any deceased child to take its parent's share."

It is a familiar principle of testamentary construction that the office of the court partakes of a dual nature. Its first duty is to ascertain from the language employed in the will (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissman*, 137 Misc. 113, 114; affd., 232 App. Div. 698), when read in the light of the circumstances surrounding the testator at the time of its execution (*Matter of McCafferty*, 142 Misc. 371,

372; affd., 236 App. Div. 678; *Matter of Quinby*, 134 Misc. 296, 299; *Matter of Weil*, 151 id. 841, 844), what disposition of his property he actually intended to make. "When that is found, it is for the court to determine whether such intended provisions are valid or otherwise." (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 91; *Central Trust Co.* v. *Egleston*, 185 id. 23, 33.)

In the present instance the wish of the testator is wholly patent. He desired to dedicate the valuable property which was the subject-matter of this trust, in equal shares, to the two branches of his descendants, his living son, George, to have the benefit of one-half thereof, and the descendants of his deceased son, William, to have the other. His further wish is also patent, namely, that the benefits to be derived from this property should be reserved for persons of his own blood. Whereas, therefore, it was his intention, if George married and produced progeny, that such children should succeed to George's half on his demise, the fact that this son, at the time of the execution of the will, had successfully withstood the wiles of matrimony for approximately half a century, rendered it somewhat improbable that he would later succumb, or, if he did, that children would result from his marriage. In consequence, in furtherance of the desire to keep the property in the family, he provided that if, by reason of failure of issue of George, his primary desire for an equal benefit to both branches of his family became impossible of fulfillment, his co-ordinate wish for the retention of the property by persons of his blood should be effectuated, and the entirety should go to the descendants of William.

It becomes of importance at this point to determine the manner in which he sought to effectuate these wishes. Obviously two courses were possible. He might establish two separate trusts, the principal fund of each being an undivided one-half interest in the property in question; or he might adopt the potentially more dangerous expedient of uniting both interests in a single trust and providing only for a division of the income between the two branches of the family. It is earnestly maintained by certain parties to the present proceeding that he adopted the former alternative. With this contention the court is unable to agree.

Whereas the language employed is not as precise as the most meticulous might desire, the general structure of the direction is entirely obvious. It consists of four parts, the second containing five subparagraphs. The first embodies the usual formal grant and directions for investment, and also the directions respecting the payment of " one part or share " of the net income to George for life, and after his death to his issue, or in default thereof, to the children of William. The second part with its various sub-

paragraphs regulates the employment of the remaining portion of the net rents for William's branch of the family. The third, which is explanatory of the preceding directions for the use of the income during the continuance of the trust, voices the intention of the testator respecting the gift of the income. The final paragraph contains the disposition of the remainder.

When the structure of the item is appreciated, the provisions of subparagraph D respecting payments to each of William's children on their attaining their respective majorities are seen clearly to refer only to the payment of accumulated and unused income and not to any portion of the principal.

In *Leach* v. *Godwin* (198 N. Y. 35, 41) the Court of Appeals pointed out a criterion for determination of the question as to whether a trust for several persons was construable as single or severable, in the following language: " In cases where a trust for the benefit of several persons is held in one fund it is necessary for the purpose of holding that they constitute separate and independent trusts that each part of the principal fund should be liberated from the trust fund upon the termination of the lives in being at the death of the testator for which the trust is held and also to find from within the will itself that such was the intention of the testator."

In the present instance the determining event is not a death, but the attainment of a majority, which, while varying the language of the rule as stated, cannot alter the principle involved. It would, therefore, follow in the present case, if the benefits for the two branches of testator's family are to be construed as separate trusts, that the will must provide that the one-half of the principal dedicated to William's branch shall in every contingency be released upon his youngest child attaining the age of twenty-one. Such, however, is not the case. The language used is: " When the youngest child of the said George * * * shall arrive at the the age of twenty-one years, or in case of his death without lawful issue, when the youngest child of * * * William * * * shall arrive at the age of twenty-one years, *this trust* shall cease and come to an end." (Italics not in original.)

It is obvious from this direction, when reviewed in the light of the rule of *Leach* v. *Godwin*, and with particular reference to the italicized words, that the testator contemplated merely the erection of a single trust, the terminating events of " *this trust* " being specified as alternative contingencies.

The intention of the testator by the use of the language employed is, therefore, entirely obvious. He gave this property to his trustees on a trust which was to terminate (1) when George's youngest

child reached majority, if George was survived by issue; or (2) when William's youngest child attained the age of twenty-one, if George died childless. During the continuance of the trust, one-half of the income was beneficially to accrue to William's branch of the family and the other half was payable to George's branch unless and until George died childless, in which event it was, during the further duration of the trust, to accrue beneficially to William's children.

The remaining, and serious, question for determination is whether this direction may be held valid in view of the provisions of section 42 of the Real Property Law. This ancient landmark of the craft of testamentary draftsmen is so familiar to all students of the subject that its present repetition *in hæc verba* is unnecessary. Suffice it to note for present purposes that it invalidates any restraint on the alienation of property for a longer period than that measured by two lives in existence at the effective date of the gift.

It is contended by a majority of the parties to the proceeding that the trust here under consideration is void under this statute by reason of the possibility that its terms may be measured by the minority, that is, a part of a life, of a person not in being at the death of the testator, namely, a possible child of George; and the familiar rule is invoked that "in determining the validity of limitations of estates, it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void." (*Schettler* v. *Smith*, 41 N. Y. 328, 334; *Matter of Wilcox*, 194 id. 288, 295.)

That such is the general rule may not be gainsaid, but that there is also a well-defined and thoroughly established exception to this rule, applicable to the case at bar, may be seen from a reading of the earlier of the two cases cited as its authority. This exception is clearly shown in *Schettler* v. *Smith* (*supra*, at pp. 336 *et seq.*)

The particular testamentary direction there in question erected a trust with the income payable to John Jacob Smith for life and on his death, if he left a widow, to pay such income to his widow for life, but if he left no widow, to pay the remainder to his issue, if any, and if none, to the issue then living of four named persons *per stirpes*. On the death of the testator, John Jacob Smith was unmarried and had no issue, and this condition continued up to

the time of his death. There, as in the case at bar, intestacy was claimed, on the basis of the obvious possibility that John Jacob Smith might have married a person not in being at testator's death. In overruling this contention the court, after noting that since the son had left no widow there was in fact no violation of the statute, as the power of alienation had been actually suspended only for a single life, namely, his own, said (at p. 336): " The son having died leaving no widow, the inquiry is, whether this lawful disposition is rendered invalid by the unlawful disposition attempted to be made in the contingency of his leaving a widow. It is difficult upon principle to see why it should. But for the prohibition of the statute, both dispositions would have been lawful and valid, and either would have taken effect according to the happening of the events giving it vitality. The statute comes in and avoids one of the dispositions, leaving the other unaffected by its provisions. Why should not the latter take effect upon the occurrence of the events, upon which it was made to depend? The authorities sustain its validity. Lewis on Perpetuities (501, 2), says, that where a limitation is made to take effect on two alternate events, one of which is too remote and the other valid as within the prescribed limits, although the gift is void so far as it depends on the remote event, it will be allowed to take effect on the happening of the alternative one. That is, in principle, precisely this case in this aspect * * *. In the present case, the testator provides, that if the son left no wife, then upon his death the trustees should convey to his issue; and if he left no issue, then upon the expiration of the life estates to convey to the issue of the other children, clearly indicating an intention, that in case the son left no wife, the conveyance to the issue of the other children should be made upon the happening of the event upon which it was to be made to his own issue if any, that is his death, leaving no wife. Adopting this construction, * * * the alternative disposition to the issue of the other children was made dependent upon the same contingency as that of the conveyance to the issue of the son, if any, that is his death, leaving no wife. This renders the limitation in favor of the issue of the other children valid."

The principle under discussion is fully developed in *Fowler* v. *Depau* (26 Barb. 224, 237), in which the court quotes and applies the rules stated by Lewis in his work on Perpetuities: " ' A limitation which will not *necessarily* take effect, if at all, within the time prescribed by the rule against perpetuities, will not be made valid by any events happening subsequently to the time of the creation of the limitation.' * * * ' This rule is subject to an exception as to executory limitations to take effect on *either of two contingencies,*

one of which is within and the other without the limits prescribed by the rule against perpetuities; and when, therefore, *events* must be looked at in order to decide the destination of the property in respect to one or other of the ultimate limitations.'" (Italics in original.)

This is subsequently restated in the following manner: "'there is an exception to this rule, in some degree founded on the rule itself. It is, that where a limitation is made to take effect on two *alternative* events, *one* of which is too remote, and the other valid as within the prescribed limits, although the gift is *void*, so far as it depends on the remote event, it *will be* allowed to take effect *on the happening* of the alternative one.' 'And gifts of this kind, so far different from all other limitations in the construction to be put upon them in reference to the laws of remoteness, that the *validity of them depends entirely on subsequent events;* if the *event* be such as gives operation to the *remote* contingency, then the limitation is wholly void. If, on the other hand, the *actual* state of things corresponds to that contemplated by the *alternative valid* branch of the contingency, the gift takes effect.'" (All italics in original.)

Additional statements and applications of this principle may be found in *Matter of Trevor* (239 N. Y. 6, 17); *Tiers* v. *Tiers* (98 id. 568, 573); *Church* v. *Wilson* (152 App. Div. 844, 850; affd., 209 N. Y. 553); *Matter of Mount* (107 App. Div. 1, 7; affd., 185 N. Y. 162); *Matter of Johnson* (233 App. Div. 587, 590); *Cross* v. *United States Trust Co.* (61 Hun, 282, 297) and many other cases.

It would be difficult to conceive of a case more clearly falling within this exception to the general rule than the present. If the trust is measured solely by the life of George and of the minority of the youngest child of William living at testator's death, the entire scheme is patently valid, since the duration of the limitation is merely during the continuance of these two specified lives in being. On the other hand, if it is to continue not only for the life of George but for the minority of a child of his born subsequent to the death of the testator, it is equally obviously too remote as being in part limited upon a life the inception of which postdated the death of the testator.

The earnest argument of the special guardian to the effect that the limitation upon the life of George's child is valid in any event, based on certain language in *Manice* v. *Manice* (43 N. Y. 303, 375), is of doubtful validity in any case. (*Seitz* v. *Faversham,* 205 N. Y. 197, 203; *Roe* v. *Vingut,* 117 id. 204, 213.) Certainly it could not be sustained under the facts of the case at bar. The present difficulty lies in the fact that the remainder of this trust has a

dual aspect. Whereas it might be argued that as to the portion contingently dedicated to the children of George there was no unlawful suspension since the remoteness of vesting is prevented by the saving clause of the statute itself, yet it is obvious that as to the descendants of William the saving clause does not apply, since there is no contingent gift over and there is, therefore, a straight potential suspension of the power of alienation for a life not in being, namely, a minority of the unborn issue of George. Since the trust is an indivisible entity by reason of the direction for its complete termination on a single alternative contingency, this potential suspension of a moiety of the corpus for a life not in being taints the entire direction.

There are, in consequence, here present two alternative directions, one valid and one void, both depending on the single contingency of whether or not George died childless. Under the principle noted, therefore, the determination of validity must await the happening of, and be governed by, the eventuality which actually transpires. This has now occurred. George has died childless. The contingency producing invalidity has not occurred and is no longer possible of happening, wherefore the illegal alternative is eliminated and the entire trust is valid. With the death of George, its sole remaining duration is measured by the minority of Henry O. von Dielen, the youngest child of testator's deceased son William, who was in being at the testator's death. Since he was born on September 29, 1906, the trust term is now at an end, and the entire property is vested in the children of William and the descendants of those who have died, *per stirpes*, according to the terms of the will, all interest of George in the property having terminated on his death without issue.

The suggestion of the possible pertinency of the clause of the will invalidating its benefits by reason of the " *in terrorem* " stipulations of item " fifth " possesses no merit. The sole action potentially partaking of such a nature is the present construction proceeding, and not only has it never been held that such action would invalidate a testamentary gift, but every pertinent adjudication is to the contrary. (*Woodward* v. *James*, 44 Hun, 95; *Unger* v. *Loewy*, 202 App. Div. 213; revd. on other grounds, 236 N. Y. 73; *Matter of Vom Saal*, 82 Misc. 531; *Matter of Hamilton*, 100 id. 72; *Matter of Farmer*, 99 id. 437; *Matter of Kozlay*, 104 id. 120; *Matter of Fellion*, 132 id. 805; *Matter of Storey*, 134 id. 791; *Matter of Brush*, 154 id. 480.)

Enter decree on notice.