In the Matter of the Estate of JAMES CHAMBERS, Deceased.

Surrogate's Court, Kings County, May 26, 1938.

*Abraham J. Multer*, for the petitioner, Philip Novick, as receiver of Charles Chambers.

*Joseph M. Paley*, for Julia L. Chambers, judgment creditor, and Lytle G. Chambers, contingent remainderman.

*Douglas & Armitage* and *Walter L. Post* for Julian Graeff Chambers, remainderman.

*Charles Chambers*, attorney *pro se*, life tenant and trustee, and for Pauline E. Chambers, trustee.

WINGATE, S. This is a proceeding for the construction of the will of this decedent, which was admitted to probate in this court on June 8, 1891. The petitioner is a receiver in supplementary proceedings in respect of certain judgments for alimony allegedly due from one of the beneficiaries of a trust created thereby and asserts the invalidity of the will by reason of its alleged infringement of section 42 of the Real Property Law. He seeks to obtain a determination that portions of the estate now held in trust for his judgment debtor are the absolute property of the latter so as to entitle him to their possession for the purpose of satisfying the judgments in aid of which he was appointed.

The answers to the petition traverse a number of its allegations, but the majority raises no triable issue, as the assertions at which they are directed are merely conclusory or narrative. Two exceptions, however, raise issues as to the capacity of the petitioner to institute the proceeding and to his appointment and qualification as receiver. The latter presents an issue of fact upon which a hearing would ordinarily be required. For purposes of present decision this issue will be resolved in favor of the petitioner and it will be assumed that he is the duly appointed, qualified and acting receiver in supplementary proceedings of the respondent, Charles Chambers.

In view of this assumption there can be no question as to his status to institute this proceeding. He is the assignee by operation of law of his judgment debtor (*Dubois* v. *Cassidy*, 75 N. Y. 298, 302; *Masten* v. *Amerman*, 51 Hun, 244, 246; *Matter of Leverich*, 135 Misc. 774, 782; affd., 234 App. Div. 625), and is, therefore, as such entitled to maintain this proceeding. (Surr. Ct. Act, §§ 145, 314, subd. 10; *Matter of Kennedy*, 143 App. Div. 839, 841.) The decisions cited by the respondents to the contrary are not in point, since they refer to actions for the construction of wills in the Supreme Court under section 205 of the Decedent Estate Law and its predecessors. It follows further that the abortive actions in the Supreme Court in respect of this will have no bearing upon the present proceeding.

A further preliminary dilatory issue is attempted to be raised in the brief of one of the respondents to the effect that this proceeding should be stayed by reason of the alleged non-payment by the petitioner of the costs in the Supreme Court actions. Had this defense been interposed by answer it is probable that it would have succeeded. (*Matter of Friedman*, 166 Misc. 664, 669.). It was, however, not so raised, and since statements of alleged facts in briefs are nugatory and improper (*Hayes* v. *Haj*, 246 App. Div. 568; *Matter of Green*, 160 Misc. 490, 491; *Matter of Montgomery*, 166 id. 347, 349), there is no justiciable issue in this regard before the court on the present record.

The merits of the proceeding are accordingly reached and the question is presented as to whether or not the terms of the testamentary document, when properly interpreted, are violative of section 42 of the Real Property Law or section 11 of the Personal Property Law.

In approaching the consideration of this question it will be well to bear in mind that where two interpretations are possible one of which will result in a determination of invalidity and the other in the validation of the document as written, the latter is to be adopted. (*Morris* v. *Morris*, 272 N. Y. 110, 116; *Matter of Trevor*, 239 id. 6, 16; *Matter of Moores*, 155 Misc. 471, 473; affd., 248 App. Div. 738; *Matter of Morss*, 164 Misc. 761, 766.)

This principle is of importance on the question of whether or not the testator intended that his entire estate should be held *in solido* upon a single trust or whether he viewed it as in substance composed of four equal parts which were to be treated as a unit only for investment purposes. In view of the fact that in several instances he dealt with it in quarter shares (See *e. g.*, items " eighth," " tenth " and " eleventh ") and that the latter interpretation would promote the validity of the composite direction, it will be adopted.

The provisions of the will are somewhat confused, but on diagramatic analysis the devolutionary wishes of the testator in respect of all portions of his property are clearly discernible. Excluding the outright bequests contained in the " first " item, the initial benefits conferred by the document are annuities to Elizabeth Breakley of $200 and to Sarah Chambers of $400, if she shall elect to reside with the widow, and of $800 if she shall not.

The contention of the petitioner that these annuities constitute measuring lives is not well taken. No trust is erected for their payment, the testamentary directions being merely that the specified annual sums be paid. Under such circumstances the language of *Matter of Cole* (219 N. Y. 435, 437) becomes pertinent: " It is the settled law of England, and has been for more than a century,

that the gift of an annuity must be regarded as a legacy of the definite sum required to purchase the annuity," and, at page 438: " The testator knew, it must be assumed, that the gift of the annuity might be regarded as a legacy of the definite sum set aside to purchase the annuity."

It follows, in the will at bar, that these gifts are not pertinent factors in the evaluation as to whether an improper restraint on alienation has been directed. (*Cott* v. *Cook*, 7 Paige, 521, 535; affd., *sub nom.*, *Kane* v. *Gott*, 24 Wend. 641; *Buchanan* v. *Little*, 154 N. Y. 147, 152; *People's Trust Co.* v. *Flynn*, 188 id. 385, 393; *Central Trust Co.* v. *Falck*, 177 App. Div. 501, 504; affd., 223 N. Y. 705.)

Coming now to the main body of the will, the directed devolution of the four quarters of the estate will be traced. The first quarter is erected into a trust with the income payable (1) to the widow for life or until her remarriage; thereupon (2) (a) to James for life, if he survives the widow or (b) to Charles for life, if James predeceases the widow. If James survives the widow the remainder is to go outright to his issue or testamentary appointee, if any, or failing both, (3) the corpus is to be held on a further trust for the life of Charles.

The mode of devolution of the second quarter is precisely the same as that of the first, except that the name of Charles is to be substituted for that of James in each instance, and *vice versa*.

The third quarter is to be held in trust (1) for the widow until the death of James provided he dies before the age of twenty-one. (2) If he survives that age, then between the ages of twenty-one and twenty-three its income is payable $500 to James and the balance to the widow; between the ages of twenty-three and twenty-five, $1,000 to James and the balance to the widow, and after twenty-five, all to James. Upon the death of James, whenever occurring, the remainder is to go outright to his issue or testamentary appointee, if any, or, failing both, (3) the corpus is to be held on a further trust for the life of Charles.

The mode of devolution of the fourth quarter is precisely the same as that of the third except that the name of Charles is to be substituted for that of James in each instance, and *vice versa*.

The main contention of the petitioner in his argument for invalidity is predicated upon the directions which have been designated " (3) " in the foregoing analyses, it being his position that each moiety is potentially restrained from alienation, *first*, during the life of the widow, *second*, during the life of a son, and *third, if that son dies without issue and without appointing the remainder,* during the life of the other son.

As the crux of the decision rests upon this last conditional alternative, it will not be amiss to quote the pertinent item of the will in which the direction appears. It reads: " *Twelfth.* In case of the death of my said wife and the death of one of my children without leaving issue and without executing the power to will hereinbefore provided, I give, devise and bequeath the whole income of all my property to my surviving child, and authorize and empower such child to appoint and dispose, by last will and testament, of the whole of my property: and I give and devise my property in such case as my child shall appoint and dispose of the same."

Before considering the pertinent law in this connection it should be noted that as a matter of fact this invalid third life use never came into being, since James, the elder of the two sons of the testator, survived the widow and died in the year 1930, leaving a will which expressly appointed the remainder under his father's will over which he possessed a power to his own son Julian. This latter will was duly probated in the Surrogate's Court of Westchester county on December 9, 1930.

In this situation the petitioner urges the applicability of the principle enunciated in *Matter of Wilcox* (194 N. Y. 288, 294) and innumerable other authorities that the composite validity of a testamentary disposition must be determined in the light of the circumstances existing at the date of the death of the testator, and if there is a possibility when the matter is viewed from that time that alienation may be restrained beyond the duration of two lives in being, the statute is infringed.

Such unquestionably is the general rule. The petitioner has, however, overlooked an equally well established exception to this rule which has been consistently applied whenever the situation warranted, " ' that where a limitation is made to take effect on two *alternative* events, *one* of which is too remote, and the other valid as within the prescribed limits, although the gift is *void*, so far as it depends on the remote event, it *will be* allowed to take effect *on the happening* of the alternative one.' " " ' And gifts of this kind, so far differ from all other limitations in the construction to be put upon them in reference to the laws of remoteness, that the *validity of them depends entirely on subsequent events;* if the *event* be such as gives operation to the *remote* contingency, then the limitation is wholly void. If, on the other hand, the *actual* state of things corresponds to that contemplated by the *alternative valid* branch of the contingency, the gift takes effect.' " (*Fowler* v. *Depau,* 26 Barb. 224, 237.) (All italics in original.)

Additional statements and applications of this exception to the general rule may be found in *Matter of Trevor* (239 N. Y. 6, 17; *Tiers* v. *Tiers* (98 id. 568, 573); *Schettler* v. *Smith* (41 id. 328, 336

*et seq.*); *Church* v. *Wilson* (152 App. Div. 844, 850; affd., 209 N. Y. 553); *Matter of Mount* (107 App. Div. 1, 7; affd., 185 N. Y. 162; *Matter of Johnson*, 233 App. Div. 587, 590); *Cross* v. *United States Trust Co.* (61 Hun, 282, 297) and many other cases. This branch of the law was also reviewed in some detail in *Matter of Von Deilen* (154 Misc. 877, at pp. 884–887).

This exception is here applicable. In respect of each trust of one-quarter of the residue of the estate the primary gift over after the second life benefit was made outright to the issue or testamentary appointee of the second equitable life tenant. This direction, if operative, was wholly valid, resulting merely in a suspension of the power of alienation for two lives in being at the death of the testator, namely, those of the widow and of one son. The alternative gift in substitution for the outright gift of the remainder to the issue or appointee of the second *cestui que trust* on the failure of both would have been void as resulting in a suspension for a third life, namely, that of the second son. The exception to the general rule, therefore, suspended the determination as to whether the composite direction was good or bad until the happening of one or the other of the alternative contingencies. The critical event has now occurred and the inoffensive alternative has transpired, wherefore the composite disposition must be declared valid *ab initio*.

In its discretion, the court will award costs of this proceeding against the petitioner to the respondents Julian G. Chambers and Charles Chambers.

Settle decree on notice in conformity herewith.