In the Matter of the Estate of AUGUSTA FRIEDMAN, Deceased.

Surrogate's Court, Kings County, March 14, 1938.

WINGATE, S.   An interesting variation from the usual routine objection to the grant of an application to compel an accounting is encountered in the present case.   The diligence of counsel has failed to disclose that the basic issue has ever previously been presented to a Surrogate's Court in this State for determination, and the independent research of the court has uncovered only a single possibly pertinent precedent in this tribunal.

As established by the allegations of the pleadings, which must be accepted as true by reason of the submission of the issue for decision on these documents alone (*Matter of Hearn*, 158 Misc. 370, 372; *Matter of Shere*, 162 id. 788), it appears that Joseph Friedman, the petitioner for the compulsory accounting, presented a claim to the administrator, which the latter promptly rejected. The claimant thereupon instituted an action in the City Court for its establishment.   After the administrator had interposed his answer the claimant moved for summary judgment on the pleadings, which was granted.   The administrator appealed to the Appellate Term of the Supreme Court, which affirmed the order of the City Court.   A further appeal was prosecuted to the Appellate Division, which reversed the orders of the Appellate Term and the City Court (*Friedman* v. *Friedman*, 251 App. Div. 835), " with costs in all courts," and denied the motion for summary judgment, " with ten dollars costs and disbursements."

The bill of costs, as taxed against the claimant, the present petitioner, pursuant to the order of the Appellate Division, amounted to $233.34.   Copies of the order of reversal and of the bill of costs, with notice of taxation, were served upon the attorney for the claimant.   No part of such costs has ever been paid. Although not appearing in the record, it is asserted in the brief filed on behalf of the petitioner in the present proceeding that the case was called in the City Court on December 17, 1937, and dismissed because of non-appearance of either side.   Whereas the ineffectiveness and impropriety of this mode of attempting to

bring matters to the attention of the court has been made the subject of frequent judicial comment (cf. *Matter of Rademaker*, 166 Misc. 201), the court will accept the verity of the statement for purposes of present discussion only.

The claimant has now filed a petition in usual form to compel a judicial settlement of the accounts of the administrator, asserting as his sole demonstration of status in this regard that he " was a creditor " of the deceased. The administrator has countered with a motion to dismiss the petition or, in the alternative, that the proceeding be stayed until the petitioner shall have paid the costs awarded against him pursuant to the order of the Appellate Division in the action for enforcement of the alleged claim instituted by him in the City Court.

This position is predicated on the provisions of section 1520 of the Civil Practice Act, which, so far as presently potentially pertinent, reads as follows: " Where costs of a motion, or any other sum of money, directed by an order to be paid, are not paid within the time fixed for that purpose by the order, or, if no time is so fixed, within ten days after the service of a copy of the order, * * * all proceedings on the part of the party required to pay the same, except to review or vacate the order, are stayed without further direction of the court until the payment thereof."

The ultimate ancestor of this enactment first made its appearance in section 12 of chapter 431 of the Laws of 1876. This was an amendment of " An act to simplify and abridge the practice, pleadings and proceedings of the courts of this State," passed in 1848 (Laws of 1848, chap. 379). Section 315 of this act was by this means amended to provide in respect of motion costs that, if they are " absolute, and not paid within ten days after service of a copy of the order directing the payment thereof, all proceedings in the action on the part of the party or parties so in default shall be stayed without further order of the court until the same are paid."

When the " Code of Remedial Justice " was enacted in 1876, section 779 thereof, whereas containing matter respecting the collection of motion costs, failed to include any equivalent of the foregoing provision effecting a stay. This neglect, however, was remedied by chapter 542 of the Laws of 1879, which amended section 779 to include wording substantially similar to that contained in the noted act of 1876. As then inserted, this provided that " all proceedings on the part of the party required to pay them, except to review or vacate the order, are stayed, without further direction of the court, until the payment thereof."

It will be observed that the enactment then made is in all particulars identical with the wording now found in section 1520 of the Civil Practice Act with the exception of the substitution of " the same " for " them."

Section 779 was carried into section 1482 of the Civil Practice Act when this recodification was compiled in chapter 925 of the Laws of 1920. The following year it was renumbered section 1520 (Laws of 1921, chap. 199, § 14), but was otherwise left unchanged, and has thus continued to the present time. Whereas this series of enactments applying to motion costs or sums of money " directed by an order to be paid " introduced a new feature into the law, the principle upon which it was predicated was of common-law origin. From early times it has been recognized as within the authority of courts to require the payment of judgment costs awarded against an unsuccessful party to an action as a condition precedent to his institution of another action based on the same subject-matter. This principle was recognized by the Court of Appeals in *Barton* v. *Speis* (73 N. Y. 133), decided in 1878, in which it is said (at p. 135): " We have no doubt of the power of the Supreme Court to make the order appealed from requiring the plaintiff to pay the costs accrued in the former action by Barton and Parkhouse. That action was for the same cause of action as this. The plaintiff purchased the obligation subject to existing equities between the parties, and she has no better position than her assignor, and he had no better position than the original plaintiffs. This power is one of equitable cognizance over suitors to prevent a multiplicity of actions, and harassing and oppressive litigation."

The last sentence of this pronouncement is, in fact, a substantial quotation of the language employed by the old Supreme Court in *Matter of Stone* (3 Cow. 380, 381), decided in 1824. In that case the plaintiff had originally brought suit in the Court of Common Pleas. He had neglected to prosecute the action, which was dismissed, with costs. He later instituted another action for the same cause in the Supreme Court, and was, on motion, stayed from its prosecution until the earlier costs should have been paid.

An earlier identical precedent is found in *Perkins* v. *Hinman* (19 Johns. 237), decided in 1821, in which the learned judges of the court apparently deemed that they were applying a principle new to the law of this State, since the opinion reads (at p. 238): " We shall adopt the rule of the K. B. [King's Bench] and grant the motion. The plaintiff, therefore, cannot proceed in this court until he has paid the costs of the nonsuit in the court below."

As a matter of fact, however, the same court had applied the same rule in 1800 in *Cuyler* v. *Vanderwerk* (1 Johns. Cas. 247), in

which the opinion observes: "The plaintiffs having voluntarily suffered a non suit in the first suit, the second is to be deemed vexatious; and the defendant is never too late, pending the second suit, before trial, to make his application to stay the proceedings."

It is, of course, obvious that the rule of law made effective by statute in connection with motion costs is *in pari materia* with this far older common-law rule respecting costs of a judgment. Concerning both it may be said, in the language of the Appellate Division for the First Department (*Wilner* v. *Independent Order Ahawas Israel*, 122 App. Div. 615, 616): "The reason for this rule is a wholesome one. It has for its basis the fact that, where a party has successfully defended a prior action, he ought not to be put to the trouble and expense of defending another action predicated upon the same cause of action until he has been paid the costs awarded to him by the court in the action first commenced."

In both connections, the underlying principle is an effectuation of the basic theory of costs of *victus victori in expensis condemnatus est* (*Stevens* v. *Central National Bank*, 168 N. Y. 560, 566), as a result of which the successful party to a litigation is entitled to recoupment from his opponent for at least some of the financial outlay necessitated by the improper attack or resistance of rights which the suit has involved. (*Matter of Wolke*, 155 Misc. 235, 236; *Matter of Manzi*, 155 id. 670, 672; *Matter of Curley*, 161 id. 391, 396.) If this is true in respect of the action or proceeding in its entirety, it is no less so in those minor phases or chapters of the litigation involving dependent rights which are customarily terminated by incidental orders. Consequently, one seeking the application of principles of justice at the hands of the court should himself do justice to his opponent by according him that indemnity for unfounded incidental attack or resistance which the law has decreed to be proper under the circumstances of the particular case. In this aspect the principle is closely analogous to the equitable doctrine that he who seeks equity must himself do it. (*Schermerhorn* v. *Talman*, 14 N. Y. 93, 126; *Brown* v. *Robinson*, 224 id. 301, 314.)

Whereas, however, the rules of procedure thus established are based on identical concepts of basic justice and fair dealing, their different sources and modes of promulgation render them distinct and somewhat different in practical operation. The older common-law rule of judicial manufacture requires the active solicitation of judicial interposition by its beneficiary. Conceivably, therefore, since the enforcement of the judicial rule is a sequence of the application of equitable principles, a measure of judicial discretion

resides in the tribunal to which the appeal is addressed to decide whether or not the conditions surrounding the particular default in payment of costs so modify the situation as to render the application of the rule inequitable on all the facts of the case. This is not the situation where the statutory rule applies, since its mandatory terms prescribe an absolute prohibition in the instances in which the conditions precedent enumerated in the statute are found to exist, and thus expressly exclude any action by the court in modification or mitigation of the bar which it interposes. It unequivocally directs that in such a situation " all proceedings * * * are stayed without further direction of the court," with the single exception of direct attack on the order of award.

Some confusion has resulted from the failure of certain courts to note this distinction between the two rules. It is pointed out with especial clarity by Mr. Justice HEFFERNAN in *Sleicher* v. *Sleicher* (137 Misc. 642, 643; affd., 230 App. Div. 802), as follows: " Defendant's position is that the costs awarded against him by the Court of Appeals are to be treated as motion costs. He concedes that because of his failure to pay the same the statutory stay contained in section 1520 of the Civil Practice Act became effective. * * * Plaintiff asserts that the costs awarded are to be regarded and treated as the costs of a judgment in the Court of Appeals. It is conceded that if the costs are mere motion costs, defendant's proceedings, unless waived, were automatically stayed without any court order. If the costs are to be regarded as in the nature of a judgment, there is no similar statutory provision for a stay. The restriction contained in section 1520 is not applicable to costs of a judgment. The practice is, however, in such cases for the court to grant a stay."

An important consequence of the distinction, noted in *Muller* v. *Brooklyn Heights R. Co.* (139 App. Div. 727, 728), is that " If a stay of proceedings is granted by an order of the court, the same court, for proper cause shown, may set aside such order and vacate the stay. But when a stay becomes operative by virtue of a statutory provision, independent of any order of the court, the court has no more power to disregard that stay, or to make an order which in effect sets the same aside, than it would have to nullify any other statutory provision." (See, also, *Brangaccio* v. *Weber Piano Co.*, 143 App. Div. 612; *Ingrosso* v. *Baltimore & Ohio R. R. Co.*, 105 id. 494; *Schechter* v. *Lichtenstein*, 223 id. 60, 61; *Sheehan* v. *Coffey*, 208 id. 240, 241.)

It is obvious that the costs awarded to the administrator and against the claimant in the case at bar were motion costs resulting

from the application of the latter for judgment on the pleadings. In this connection *Sleicher* v. *Sleicher* (137 Misc. 642, 643; affd., 230 App. Div. 802) is an authority directly in point. It follows, therefore, that upon the taxation of the costs and the expiration of ten days from the service of the order " all proceedings on the part of the party required to pay the same," namely, the claimant, were stayed automatically. No action of any court was required to make such stay effective and no court possesses any authority to vacate or modify it, since " there is no relief against the provisions of a statute anywhere." (*Thompson* v. *Egbert*, 17 N. J. L. 459, 462; *Matter of Shupack*, 158 Misc. 873, 878.)

Two further questions remain for consideration, namely, *first*, whether the stay upon further proceedings by the claimant, which is effective in the City Court until his payment of the costs awarded against him there, is also operative in the Surrogate's Court; and, *second*, whether such stay, if here effective, prevents the institution or prosecution of the present proceeding for a compulsory accounting.

It has been noted that the rules respecting the judicial and the statutory stays are *in pari materia* and that the same reasons of policy underlie both. In the determination of whether a stay arising in one tribunal by reason of the operation of section 1520 of the Civil Practice Act is effective in another, applications of the rule respecting the extent of the judicial stay furnish persuasive precedents. Judgments for costs in the Court of Common Pleas were early held effective bases for stays in subsequently instituted actions in the Supreme Court. (*Matter of Stone*, 3 Cow. 380; *Perkins* v. *Hinman*, 19 Johns. 237.) In more recent times similar judgments in the City Court have been held effective in the Supreme Court (*Ingrosso* v. *Baltimore & Ohio R. R. Co.*, 105 App. Div. 494; *Seiler* v. *Klugman*, 164 id. 926; *Simms* v. *Carter & Weeks Stevedoring Co.*, 169 id. 582); likewise judgments in the County Court (*Singer* v. *Garlick*, 123 App. Div. 282) and the Municipal Court (*Wilner* v. *Independent Order Ahawas Israel*, 122 App. Div. 615; *Behrens* v. *Sturges*, 138 id. 537) have served as bases for stays in the Supreme Court and *vice versa*. (*Wetzel* v. *Barhite*, 93 Misc. 496.) Non-payment of costs in an equity action has resulted in the stay of a subsequent action at law based on the same underlying situation (*Behrens* v. *Sturges*, 138 App. Div. 537), and, finally, the same principle has been applied in staying an action in New York courts where there was an unpaid judgment for costs standing against the plaintiff as a result of an action instituted by him respecting the same subject-matter in a foreign jurisdiction. (*Wolfe* v. *Blue Ribbon Auto & Carriage Co.*, 170 App. Div. 76.)

The same principle has been applied in respect of motion costs in the Supreme Court where a similar motion was subsequently made in the Surrogate's Court. (*Matter of McTevey*, 93 Misc. 384.)

Further support for the present applicability of the statutory rule may be found in the alteration of the enactment effected by chapter 542 of the Laws of 1879. As originally passed in 1876, the section read that " all proceedings *in the action* on the part of the party or parties so in default shall be stayed." (Italics not in original.) Under this phraseology the stay obviously would not apply in another court. In 1879, however, this language was altered by the elimination of the limiting italicized words. The Legislature must be presumed to have intended an alteration in the former rule by the pointed deletion of this limitation. (*People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484, 495.) The only logical interpretation which may be given to the elimination, therefore, is to assume that the Legislature intended thereby to make the inhibition as broad as that existing under the judicial rule and to prohibit any further prosecution of his rights anywhere by the defaulting party, so long as his default continued. It must follow, therefore, that the non-payment of the costs of the City Court action effected an automatic stay of any proceedings by the claimant in this court, provided there existed the requisite identity between the City Court action and the proceeding attempted to be instituted here.

Turning to this final consideration, the authorities are uniform to the effect that the test of applicability of the principle is as to whether determination of the two controversies involves, in substance, an examination of the same considerations. It will be applied if the later suit " seems to be a mere attempt by a change of the scheme of the action and the form in which it is instituted, to accomplish a result which has heretofore been attainable." (*Sprague* v. *Bartholdi Hotel Co.*, 68 Hun, 555, 556.) It is not necessary that there should " be complete identity of the subject-matter of both actions " (*Spaulding* v. *American Wood Board Co.*, 58 App. Div. 314, 315) so long as the ultimate object sought is substantially the same.

Applying these tests, it is apparent that the object of the claimant in the present proceeding is identical with that which he had in mind in the former action, namely, to establish his right to collect a sum of money alleged to be owing him from the estate. He has no other interest in its assets, and the filing of an account by the administrator is an essential preliminary step leading to this desired result. It is the only " proceeding " now open to the claimant by

means of which he may conceivably be paid. It is, therefore, within the inhibition of the statute, and, whereas the court has jurisdiction of the proceeding and is under obligation to entertain it (*Wessels* v. *Boettcher*, 142 N. Y. 212, 213, 214), the petitioner is by statutory fiat debarred from proceeding with it until he has paid the costs heretofore awarded against him in the City Court.

Enter order on notice in conformity herewith.