PRUDENTIAL OIL CORPORATION, Respondent, v PHILLIPS PETROLEUM COMPANY, Appellant.

First Department, December 15, 1981

APPEARANCES OF COUNSEL

*Richard J. Urowsky* of counsel *(Theodore O. Rogers, Jr.,* with him on the brief; *Sullivan & Cromwell,* attorneys), for appellant.

*Cynthia M. Brill* of counsel *(William J. McSherry, Jr.,* and *Edward Brodsky* with her on the brief; *Spengler Carlson Gubar Brodsky & Rosenthal,* attorneys), for respondent.

OPINION OF THE COURT

SULLIVAN, J.

This lawsuit has its genesis in discussions which took place in 1962 and 1963 between representatives of Phillips Petroleum Company, the defendant herein, and Prudential Oil Corporation, a Connecticut corporation (Prudential Connecticut), concerning the development of an oil refinery in Puerto Rico to aid in the expansion of industry there, particularly the manufacture of petrochemicals. Under the proposal being discussed Prudential Connecticut was to construct the facility, while Phillips would supply the crude oil and purchase any petroleum refined by the plant

and not used in Puerto Rican petrochemical operations. The parties failed to reach agreement, however, and Prudential Connecticut never constructed the proposed refinery.

Subsequent to these discussions Phillips began considering a petrochemical facility of its own in Puerto Rico to be built in conjunction with an agency of the Puerto Rican Government. In 1965, Phillips obtained a Federal oil import quota for the project and, several years later, completed the facility, known as Phillips Puerto Rico Core, Inc.

In the meantime, on March 1, 1965, Prudential Oil Corporation, a Delaware corporation (Prudential Delaware), was organized and assumed all the assets, liabilities and business operations of Prudential Connecticut, which was dissolved. Thereafter the officers of Prudential Delaware approached Phillips and asserted a claim to an ownership interest in the Core facility on the basis of the discussions between Phillips and Prudential Connecticut in 1962 and 1963. Phillips rejected the claim.

In 1966 Prudential Delaware reorganized itself, changed its name to Prudential Equities Corp. and, apparently, for no reason other than to divorce itself of ownership of its claim against Phillips, also a Delaware corporation, created a wholly owned subsidiary, Prudential Oil Company, a New York corporation (Prudential New York), ultimately to become the plaintiff herein, to which it assigned its interest in the petrochemical project in Puerto Rico and any "claims, rights, or causes of action accruing or arising" out of the alleged joint venture with Phillips.

Since its incorporation Prudential New York has never kept any books of account, had a salaried employee, entered into a contract or filed an income tax return. It operates out of Prudential Delaware's offices and all of its officers are officers of Prudential Delaware. In fact, plaintiff concedes that Prudential New York's "sole business * * * is the prosecution of this action" against Phillips "to recover the property rights of Prudential-Delaware in and to the petrochemical complex in Puerto Rico presently administered by Phillips".

In September, 1967 Prudential New York, claiming ownership of the Core facility and alleging breach of a joint

venture agreement and the tortious misappropriation of certain business concepts arising out of the petrochemical project in Puerto Rico, commenced an action against Phillips in the United States District Court for the Southern District of New York. In 1969, after Phillips had challenged the existence of diversity jurisdiction on the ground that the purported transfer of Prudential Delaware's claims to Prudential New York was a "collusive assignment" designed to manufacture diversity of citizenship jurisdiction (US Code, tit 28, § 1332, subd [a]), Prudential New York, as a protective measure, commenced this action, which asserts claims identical to those set forth in the Federal complaint. This action was stayed pending the conclusion of the Federal action.

After a substantial verdict in Prudential New York's favor, almost $2.7 million with prejudgment interest, the United States Court of Appeals for the Second Circuit, on December 1, 1976, without reaching Phillips' arguments attacking the legal sufficiency of the verdict, dismissed the Federal action for lack of diversity jurisdiction on the ground that the assignment of Prudential Delaware's claim must be considered presumptively improper and as having been undertaken for the purpose of attempting to manufacture diversity jurisdiction. Two judgments for costs totaling $33,100.48 were subsequently entered against Prudential New York. These judgments remain unsatisfied after more than four years despite Phillips' efforts to obtain payment. In response to a Marshal's letter requesting remittance of the amounts due pursuant to his levy, the president of Prudential Delaware, in pertinent part, wrote: "Prudential Oil Corporation, a New York corporation, does not have any funds or property to remit to you pursuant to your levy. Prudential Oil Corporation is a wholly owned subsidiary of [Prudential Delaware] and its sole asset is a claim against Phillips Petroleum Company in connection with a petrochemical facility in Puerto Rico."

Phillips moved to stay this action on the basis of Prudential New York's failure to pay the two judgments for costs. Special Term, holding that the grant of such relief was subject to the same standards as the issuance of an injunction, found, *inter alia,* that Phillips had failed to show a

likelihood of success on the merits or "imminent harm" sufficient to warrant equitable intervention, and denied the motion. We believe that Special Term applied an incorrect standard and that the appropriate exercise of discretion calls for the imposition of a stay of this action pending satisfaction of these judgments.

"The rule is well established that non-payment of costs in an action entitles a defendant in whose favor they are awarded to stay all proceedings in a subsequent action brought by the same plaintiff upon the same cause of action." *(Robbins v Rogers,* 247 App Div 603, 604; see *Schwartz v Minsker Realty Co.,* 166 App Div 681, 683; *Matter of Friedman,* 166 Misc 664, and cases cited therein.) In *Gaussen v United Fruit Co.* (317 F Supp 813, 814) the court stated, "The general rule is clear that the trial will be stayed until plaintiff pays the costs of a prior action involving the same claim". This rule has been the settled law in this State since at least 1800,[1] and has been routinely recognized and applied over the years.[2]

In 1966, in *Associated Sales Analysts v Weitz* (25 AD2d 64), this court was confronted with the issue of whether the common-law power to stay subsequent actions was nullified by the failure to carry over into CPLR 5101 the provision of section 1520 of the old Civil Practice Act, which authorized an automatic stay within the same action for the nonpayment of motion and other interlocutory costs. We held (p 67) that "the discretionary judicial power to stay for nonpayment of costs in prior actions still exists and should continue."

"The reason for [the] rule is * * * that, where a party has successfully defended a prior action, he ought not to be put to the trouble and expense of defending another action predicated upon the same cause of action until he has been paid the costs awarded to him by the court in the action

---

1. *Culyer v Vanderwerk,* 1 Johns Cas 247.

2. In addition to the cases cited in the text of the opinion, see *Glen 4912 Corp. v Strauss,* 44 AD2d 582; *McDevitt v Hyatt,* 185 App Div 370; *Wolfe v Blue Ribbon Auto & Carriage Co.,* 170 App Div 76; *Simms v Carter & Weekes Stevedoring Co.,* 169 App Div 582; *Seiler v Klugman,* 164 App Div 926; *Behrens v Sturges,* 138 App Div 537; *Conlon v National Fireproofing Co.,* 128 App Div 270; *Singer v Garlick,* 123 App Div 282; *Muratore v Pirkl,* 109 App Div 146; *Ingrosso v Baltimore & Ohio R.R. Co.,* 105 App Div 494; *Spaulding v American Wood Bd. Co.,* 58 App Div 314; *Sprague v Bartholdi Hotel Co.,* 68 Hun 555.

first commenced." *(Wilner v Independent Order Ahawas Israel,* 122 App Div 615, 616-617.) "The power [to stay] is one of equitable cognizance over suitors to prevent a multiplicity of actions, and harassing and oppressive litigation." *(Barton v Speis,* 73 NY 133, 135.)

The traditional stay rule requires that the second action be stayed unless the plaintiff demonstrates "extraordinary circumstances to merit withholding of a stay." (See *Associated Sales Analysts v Weitz,* 25 AD2d, at p 67.) Courts have recognized, to some extent, a litigant's impecunious status (see *Merchants' Credit Clearing House Assn. v Dennis,* 143 App Div 170) and "the merits of the case * * * and perhaps other circumstances", as relevant in determining whether a plaintiff brings itself within the narrow exception to the stay rule. *(Associated Sales Analysts v Weitz,* 25 AD2d, at p 67.) But one of the overriding considerations in determining whether to stay the subsequent proceeding is the principle "that a litigant has a duty to obey a judgment of the court, even if only in a prior action arising out of the same fact complex for the same or a similar wrong" *(Associated Sales Analysts v Weitz, supra,* p 67; see, also, *Sheehan v Coffey,* 208 App Div 240, 241.)

Although Prudential New York makes a showing of merit we are unable to find any evidence of hardship in this commercial litigation, involving rights in a petrochemical facility, that would warrant a departure from the traditional stay rule. Both of the real parties in interest, Phillips and Prudential Delaware, are corporations with substantial assets, are capable of meeting the costs of litigation, and have the responsibility, like any other litigant, of complying with the orders and judgments of the court. That Prudential Delaware, with reported assets on its balance sheet in excess of $19,500,000, as of December 31, 1979, has elected to pursue its claims through a shell subsidiary formed solely for the purpose of making a Federal forum available to it is hardly a basis for departing from the normal stay rule.

At a deposition taken in the Federal action, the president and chairman of the board of both Prudential Delaware and Prudential New York confirmed that Prudential Delaware is paying the plaintiff's legal fees in both the

Federal action and this proceeding. He also stated that since Prudential Delaware is the sole shareholder of Prudential New York it is in a position to direct the payment to itself of any amount plaintiff may recover in this action. As the United States Court of Appeals had occasion to note, "Prudential Delaware considers its wholly owned New York subsidiary to be its alter ego in the prosecution of the present lawsuit" which is being "conducted wholly in the parent's interest and under the direction of the person who is the parent's chief executive." *(Prudential Oil Corp. v Phillips Petroleum Co.,* 546 F2d 469, 473, 476.) In these circumstances, to describe Prudential New York as an impecunious litigant falling within an exception premised on equitable considerations is to close one's eyes to reality.

Moreover, and in any event, impecuniousness alone is insufficient to avoid imposition of the stay *(Schwartz v Minsker Realty Co.,* 166 App Div 681, *supra; Wilner v Independent Order Ahawas Israel,* 122 App Div 615, *supra),* although additional circumstances, such as "impecuniousness caused by the wrong alleged would cast the matter in a different light." *(Associated Sales Analysts v Weitz,* 25 AD2d, at p 67; see, *Merchants' Credit Clearing House Assn. v Dennis,* 143 App Div 170, *supra.)*[3] Since Prudential New York was not even incorporated until after the events alleged in the complaint had occurred, no basis exists to conclude that Phillips is any way responsible for Prudential New York's financial condition. Its condition is, no more, no less, precisely what Prudential Delaware has chosen to make it.

As for Prudential New York's suggestion that Phillips, in making "motion after motion" and taking "appeal after appeal",[4] was somehow untimely in moving for the stay, such a motion is seasonable if made at any time prior to trial. "[T]he defendant is never too late, pending the second suit, before trial, to make his application to stay the

---

3. Of course, since discretion is involved a court may, in an appropriate case, withhold the stay where merit and penury are shown.

4. In fact, Phillips has made only two motions to dismiss in this action, both of which were reviewed by this court in a single consolidated appeal, together with Prudential New York's own appeal from an order of Special Term dismissing most of its amended complaint. (Prudential New York subsequently filed a second amended complaint which was sustained on the consolidated appeal.)

proceedings." *(Culyer v Vanderwerk,* 1 Johns Cas 247; see, also, *Jackson, ex dem. Williams v Miller,* 3 Cow 57.)

Accordingly, the order, Supreme Court, New York County (BLYN, J.), entered April 15, 1981, denying defendant's motion for a stay of this action should be reversed, on the law and in the exercise of discretion, with costs and disbursements, and the motion granted.

MURPHY, P. J., SANDLER, ROSS, and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on April 15, 1981, unanimously reversed, on the law and in the exercise of discretion, and motion for a stay granted. Appellant shall recover of respondent $50 costs and disbursements of this appeal.